# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOSEPH J. WATLEY,

      Plaintiff,

         v.

MICHAEL FELSMAN, DANIEL
NILON, AND JAMES SOHNS,

      Defendants.

NO. 3:16-cv-2059

(JUDGE CAPUTO)

## MEMORANDUM

Presently before me are two motions: Plaintiff Joseph Watley's ("Watley") Motion for Partial Summary Judgment, (Doc. 28); and Defendants Michael Felsman ("Trooper Felsman"),[1] Daniel Nilon ("Trooper Nilon") and James Sohns' ("Trooper Sohns") (collectively, the "Troopers" or "Defendants") Motion for Summary Judgment (Doc. 40). Watley seeks summary judgment on his unlawful search and seizure, malicious prosecution, and false arrest/imprisonment claims, while Defendants move for summary judgment on all claims.

## I. Background

On May 11, 2016, while traveling from Indiana on his way home from purchasing a car, Watley was pulled over by Trooper Felsman. (Doc. 29 at ¶ 1.) Watley was issued three traffic citations for: (1) driving too slowly, (2) having a broken tail light, and (3) improper window tinting. (Doc. 29-2.) Each of the three citations was ultimately terminated in Watley's favor. (Doc. 29-3 at 5:21-23; 6:18-20.)

Trooper Felsman testified that he first observed Watley's speed of 48 miles per hour in a 65 mile per hour zone while he was on patrol. (Doc. 29-3 at 41:14-24.)[2]

---

[1] Trooper Felsman has since been promoted to Corporal. (Doc. 29-3 at 3:6-7.) For consistency, I will refer to him under his title at the time of the relevant events.

[2] Watley does not contest that he was clocked going 48 miles per hour.

Next, as Watley's car passed Trooper Felsman's patrol car, Trooper Felsman testified that he observed that the tint of Watley's passenger side window was so dark he could not see the silhouette of the driver. (Doc. 29-3 at 42:1-5.) Watley testified he could see out of his windows with "no problem whatsoever." (Doc. 29-1 at 34:23-25.) Trooper Felsman pulled out to follow Watley's vehicle, at which point he testified he observed that the passenger side tail light lens was cracked, and a piece of the lens was missing. (Doc. 29-3 at 42:6-10.)[3] Despite this damage, the rear light was still working. (Doc. 31, Ex. A.) After pulling Watley over, Trooper Felsman approached the front passenger side door of Watley's car and told him to put his window down. (Doc. 31, Ex. A.) Watley did not do so despite repeated instructions from Trooper Felsman. *Id.* Instead, Watley held up a sign on brown cardboard reading "I remain silent. No searches. I want my lawyer. Place any tickets under wiper." (*Id.*; Doc. 43-2.) Trooper Felsman agreed that Watley had the right to remain silent. (Doc. 29-3 at 34:25-35:5; Doc. 31, Ex. A.)

Trooper Felsman then told Watley he needed to see his license, registration and insurance card. (Doc. 31, Ex. A.) Watley did not immediately hand out the documents, and did not put down his window. (Doc. 31, Ex. A.)[4] Trooper Felsman then radioed

---

[3] Watley asserts, without support, that the citation for driving too slowly was the "lead charge" and that the other two citations were not the reason for Trooper Felsman's stop. (Doc. 43, pp. 4-5.) Trooper Felsman testified that he did not initiate the traffic stop based on Watley's speed alone, but pulled out behind Watley after he noticed that the window tint on the car was so dark he could not see the silhouette of the driver. (Doc. 29-1 at 6:21-7:7.) Further, the video of the encounter recorded by Trooper Felsman's dashboard camera ("Dashcam Video") submitted by Watley shows that each of these conditions was observable from Trooper Felsman's patrol car before he stopped Watley. (Doc. 31, Ex. A.) Given that Watley has no basis for asserting the stop was initiated only because of his low speed, I conclude that a reasonable jury could not credit this factual assertion.

[4] Watley denies Defendants' account of these requests and asserts simply that he "showed what was asked of him" (Doc. 44 at ¶¶ 8, 10), but the Dashcam Video shows that Watley did not hand the documents out of the window until other Troopers arrived on the scene, approximately eight minutes after the initial request by Trooper Felsman, after Trooper Felsman informed him he would not be able to read the documents through the window, asked him again to give him the documents, and repeatedly

2

for assistance. (Doc. 31, Ex. A.) While backup was arriving, Trooper Felsman continued to tell Watley to put his window down so that Trooper Felsman could see him. (*Id.*) Trooper Felsman also asked for Watley's license, insurance and registration. (*Id.*) The Dashcam Video shows Trooper Felsman saying "that's not gonna cut it," apparently in response to Watley holding the documents up for him to view through the window. (*Id.*; Doc. 29-3 at 44:20-45:1.) After additional Troopers arrived, Trooper Nilon approached Watley's passenger side window and told him he would need to "exhibit" the documents to the Troopers. (Doc. 31, Ex. A.) After Watley again held up the documents inside the car, Trooper Nilon said "no, not read it through a window, you are required to hand it to us or you will be taken into custody and arrested." (*Id.*) After approximately another minute, Watley rolled the window down about an inch and handed out the documents. (*Id.*; Doc. 29-1 at 42:11-20.)

After Trooper Felsman stated he was unable to positively identify Watley through his front passenger side window because of the window's tint, Trooper Scochin leaned in front of the car to identify Watley through the untinted windshield. (*Id.*, Doc. 29-3 at 46:2-6.) Trooper Nilon then printed off the statute giving the Troopers authority to arrest and handed it through the window, which was still open only about an inch, to Watley. (Doc. 31, Ex. A.) Troopers Felsman and Nilon discussed that Watley was not responding either verbally or nonverbally to them, and that they did not believe he would respond to the citations. (Doc. 31, Ex. A.) Although the Pennsylvania Vehicle Code allows 10 days to respond to a traffic citation, Trooper Felsman relied upon 75 Pa. C.S.A. § 6304-6305 to arrest Watley and take him "forthwith" to a magistrate. (Doc. 35 at ¶ 5.) After calling Magistrate Judge Cooper's office to confirm that they could take Watley into custody, the Troopers told Watley to get out of the car or they would use force. (Doc. 31, Ex. A) Watley remained in the

---

asked him to put the window down. (Doc. 31, Ex. A.) Where the non-moving party asserts facts that are "blatantly contradicted" by video evidence in the record, the evidence is properly viewed in the light shown by the video. *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

car for another minute, but then got out. (*Id.*) Troopers Felsman and Nilon, along with an unidentified third Trooper, turned Watley to face the car and put his hands on the roof of the car before handcuffing them behind his back. (*Id.*) The Troopers walked Watley back to Trooper Felsman's car, where they searched his pockets and removed his car keys. (*Id.*; Doc. 29 at ¶¶ 7-8.) Trooper Felsman shackled Watley's legs. (Doc. 29-3 at 36:13-14.) Troopers Nilon and Scochin searched Watley's car without a warrant. (Doc. 29 at ¶ 14; Doc. 31, Ex. A.) While transporting Watley to the magistrate on duty, Trooper Felsman radioed the Troopers who were still at the scene and asked them to send a picture of the sign to his cell phone. (Doc. 31, Ex. B.)

Trooper Felsman took Watley from the scene of the arrest to the Magistrate Judge's office. (Doc. 31, Ex. B.) At the hearing, Magistrate Judge Cooper committed Watley to the Pike County jail. (Doc. 42-2 at 53:4-6.) After the hearing, Trooper Felsman transported Watley from the Magistrate Judge's office to the jail. (*Id.* at 44:6-8.) The next morning, Trooper Felsman transported Watley back to the Magistrate Judge's office for a hearing. (*Id.* at 58:11-17.) Following the hearing, Magistrate Judge Cooper signed a prisoner release directing that the summary trial be continued to a later date and releasing Watley from prison. (Doc. 43, Ex. F.) Trooper Felsman transported Watley, handcuffed, from the Magistrate Judge's office to the impounding lot. (Doc. 29-3 at 62:5-13.)

## II. Legal Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Wright v. Corning*, 679 F.3d 101, 103 (3d Cir. 2012) (quoting *Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995)). A fact is material if proof of its existence or

nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. *See Edelman v. Comm'r of Soc. Sec.*, 83 F.3d 68, 70 (3d Cir. 1996). Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *Anderson*, 477 U.S. at 248 An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id*. Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See Howard Hess Dental Labs., Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 251 (3d Cir. 2010). The moving party may present its own evidence or, where the non-moving party has the burden of proof, simply point out to the court that "the non-moving party has failed to make a sufficient showing on an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"When considering whether there exist genuine issues of material fact, the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). Once the moving party has satisfied its initial burden, the burden shifts to the non-moving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson*, 477 U.S. at 256-57. The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

"To prevail on a motion for summary judgment, the non-moving party must show specific facts such that a reasonable jury could find in that party's favor, thereby establishing a genuine issue of fact for trial." *Galli v. New Jersey Meadowlands*

5

*Comm'n*, 490 F.3d 265, 270 (3d Cir. 2007) (citing Fed. R. Civ. P. 56(e)). "While the evidence that the non-moving party presents may be either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a scintilla." *Id*. (quoting *Hugh v. Butler County Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005)). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

Where cross-motions for summary judgment are filed, the summary judgment standard remains the same. *Lawrence v. City of Phila.*, 527 F.3d 299, 310 (3d Cir. 2008). When presented with cross motions for summary judgment, the Court must consider the motions separately, *see Williams v. Phila. Hous. Auth.*, 834 F. Supp. 794, 797 (E.D. Pa. 1993), *aff'd*, 27 F.3d 560 (3d Cir. 1994), and view the evidence presented for each motion in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. Discussion

#### A. Probable Cause

A threshold issue in this case is whether Defendants had probable cause to arrest Watley. Since this issue is dispositive in evaluating most of Watley's claims, I will address it first and then explain how it affects each claim. "Although the probable cause inquiry is usually a question for the jury, 'where no genuine issue as to any material fact exists and where credibility conflicts are absent, summary judgment may be appropriate.'" *See Stetser v. Jinks*, 572 Fed.App'x. 85, 87 (3d Cir. 2014)(citing *Sharrar v. Felsing*, 128 F.3d 810, 818 (3d Cir. 1997)(*abrogated on other grounds by Curley v. Klem*, 499 F.3d 199, 209-11 (3d Cir. 2007)).

75 Pa. C.S.A. § 6304(a)[5] provides that "[a] member of the Pennsylvania State

---

[5] Watley makes the passing statement in his Reply Brief in Support of Summary Judgment that he disputes the constitutionality of § 6304(a) "since it would eviscerate any claim for false arrest related

Police who is in uniform may arrest without a warrant any person who violates any provision of this title in the presence of the officer making the arrest." 75 Pa. C.S.A. § 6305(a) provides that "[u]pon arrest of a nonresident for any violation of this title, a police officer shall escort the defendant to the appropriate issuing authority for a hearing, posting of bond or payment of the applicable fine and costs." "The determination that probable cause exists for a warrantless arrest is fundamentally a factual analysis that must be performed by the officers at the scene. It is the function of the court to determine whether the objective facts available to the officers at the time of arrest were sufficient to justify a reasonable belief that an offense was being committed." *United States v. Glasser*, 750 F.2d 1197, 1206 (3d Cir. 1984). "Probable cause exists whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested." *United States v. Laville*, 480 F.3d 187, 194 (3d Cir. 2007). "The validity of the arrest is not dependent on whether the suspect actually committed any crime, and 'the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant.'" *Johnson v. Campbell*, 332 F.3d 199, 211 (3d Cir. 2003)(quoting *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979)). Importantly, the question is not whether it is now reasonable to believe that Watley *in fact* committed each violation, but whether it was reasonable at the time for Trooper Felsman to conclude that he had. Further, "[p]robable cause need only exist as to any offense that could be charged under the

---

to a summary traffic stop[] [and is also] at odds with Pennsylvania law that requires a person commit a felony." As stated *infra*, false arrest is "1) the detention of another person 2) that is unlawful." *Millbourne-Hunter v. Hittle*, Civ. No. 11-2264, 2012 WL 5677470, at *4 (E.D.Pa. Nov. 15, 2012)(quoting *Manley v. Fitzgerald*, 997 A.2d 1235, 1241 (Pa. Cmwlth. 2010)). A police officer in Trooper Felsman's position could still be liable for false arrest related to a summary traffic stop if, for example, he did not observe the offense being committed, or otherwise lacked probable cause to believe a violation had occurred. Further, Pennsylvania law requires a felony to support a warrantless arrest only where the offense is committed outside the presence of the arresting officer. *See Com. v. Streater*, 619 A.2d 1070, 1073 (Super. Ct. Pa. 1993).

circumstances." *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994). Therefore, even if probable cause existed for only one of the three charged offenses, Trooper Felsman had probable cause to arrest Watley. *Id.*

Here, probable cause existed for Trooper Felsman to arrest Watley on each of the three violations for which he was cited. First, Trooper Felsman clocked Watley going 48 miles per hour in a 65 mile per hour zone. (Doc. 29-3 at 41:19-24.) Trooper Felsman testified that the other cars on the road in the 10 minutes prior to Watley's passing were moving significantly faster. (Doc. 29-3 at 80:7-81:1.) Watley does not contest that he was clocked driving 48 miles per hour, but contends that this offense requires there to be a car behind him and asserts there was not. Although the Dashcam Video shows that there was no car directly behind Watley when Trooper Felsman pulled him over, a steady stream of cars drives by throughout the video beginning immediately after Trooper Felsman's and Watley's cars are parked on the side of the road. (Doc. 31, Ex. A.) Even viewing these facts in the light most favorable to Watley, a reasonable jury could not conclude it was unreasonable for Trooper Felsman to believe that Watley was driving so slowly as to impede traffic: considering the number of cars on the road, and that Watley does not contest that he was driving over 15 miles per hour below the speed limit, cars driving at or near the speed limit would necessarily catch up to him.

Trooper Felsman also had probable cause to believe Watley had violated the provision governing excessive window tinting. 75 Pa. C.S.A. § 4524(b) provides that "[n]o person shall drive a motor vehicle with any sign, poster or other nontransparent material, including ice or snow, upon the side wings or side or rear windows of the vehicle which materially obstructs, obscures or impairs the driver's clear view of the highway or any intersecting highway." Trooper Felsman testified that the tinting was "quite possibly the darkest window tint that [he] had ever seen" and stated that he was not able to read Watley's sign through the window when it was three to four feet away. (Doc. 29-3 at 81:6-22.) The Dashcam Video shows that it was impossible to see even

the outline of a driver inside the car until the car was stopped and Trooper Felsman pulled his patrol car up to a few feet behind it. (Doc. 31, Ex. A.) In addition, in order for the Troopers to see Watley clearly enough to confirm that he was the person on his license, Trooper Scochin had to look through the car's untinted windshield. (Doc. 31, Ex. A.) Trooper Felsman reasonably concluded that Watley's view from inside the car must be similarly obscured by the tinting and therefore had probable cause to believe Watley violated the cited provision. Even viewed in the light most favorable to Watley, and ignoring Trooper Felsman's testimony about his inability to see into the car, a reasonable jury could not conclude that the citation based on Watley's window tinting was unreasonable based on the above undisputed facts.

Trooper Felsman also had probable cause to arrest Watley based on his broken tail light. The lens over Watley's light was cracked, and a piece of the lens was missing, though the light was still working. (Doc. 31, Ex. A.) Section 4303(b) of the Pennsylvania vehicle code states that "[e]very vehicle operated on a highway shall be equipped with a rear lighting system including, but not limited to, rear lamps [] in conformance with regulations of the department." The applicable regulations are as follows: 67 Pa. Code § 175.66 provides that "[e]very required lamp or switch shall be in safe operating condition as described in§ 175.80," which states that a vehicle cannot pass inspection if "the lamp has a missing *or broken* lens" (emphasis added). Trooper Felsman therefore reasonably concluded that the broken tail light warranted a citation. The fact that the citation was later dismissed by the Pike County Court of Common Pleas does not mean that Trooper Felsman incorrectly understood the regulation: the Court did not find Watley not guilty of the violation, but simply dismissed the citation. *See Com. v. Watley*, No. CP-52-SA-0000019-2016, at 2 (Pa. Ct. Comm. Pl. 2016). A reasonable jury could not conclude that Trooper Felsman acted unreasonably with regard to this citation because he correctly understood the law and applied it to the condition of Watley's tail light.

Having reasonably concluded that each of the above violations was committed

in his presence, Trooper Felsman had probable cause to arrest Watley under 75 Pa. C.S.A. § 6304(a).

## B. Counts I, VIII, and IX: Unlawful Seizure and Search[6]

### *1. Seizure and Search of Watley*

Watley first claims that he and his vehicle were unlawfully seized and searched by Troopers Felsman, Nilon, and Sohns in violation of the Fourth and Fourteenth Amendments. As discussed above, Trooper Felsman had probable cause to believe that Watley had committed each of the three relevant violations, and therefore lawfully arrested him pursuant to 75 Pa. C.S.A. §§ 6304(a) and 6305(a).

Since the arrest in this case was valid, the search of Watley's pockets by Trooper Nilon was lawful as a search incident to a valid arrest. "An officer may conduct a search incident to arrest without obtaining a warrant." *See United States v. Elmore*, Cr. No. 11-00361-02, 2012 WL 2905195, at *6 (M.D.Pa. July 16, 2012)(citing *Illinois v. Rodriguez*, 497 U.S. 177, 185 (1990)); *see also Michigan v. DeFillippo*, 443 U.S. 31, 35 (1979)("Under the Fourth and Fourteenth Amendments, an arresting officer may, without a warrant, search a person validly arrested.")(citation omitted). "[T]he constitutionality of a search incident to an arrest does not depend on whether there is any indication that the person arrested possesses weapons or evidence. The fact of a lawful arrest, standing alone, authorizes a search." *Maryland v. King*, 569 U.S. 435, 449 (2013)(quoting *DeFillipo*, 443 U.S. at 35). An arrest pursuant even to a simple traffic violation permits a search incident to arrest. *United*

---

[6] Watley's Third Amended Complaint includes several allegations regarding his treatment at his hearing and while he was in prison. Trooper Felsman had no control over Watley's treatment once he was in front of the Magistrate Judge or in the prison, and Section 1983 provides no cause of action for subsequent constitutional violations which would not have occurred "but for" an officer's arrest. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988)(citing *Parratt v. Taylor*, 451 U.S. 527, 537 n. 3 (1981))("A defendant in a civil rights action must have personal involvement in the alleged wrongs"); *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077, 1082 (3d Cir. 1976)). Further, Watley has filed a separate suit in this court relating to his treatment while in prison. *Watley v. Pike County, et al.*, Civ. No. 17-01539. I will therefore not address these allegations in this matter.

*States v. Robinson*, 414 U.S. 218, 224 (1973)(search permissible where defendant was lawfully arrested for driving after revocation of his license). Since, as discussed above, no reasonable jury could find that Trooper Felsman lacked probable cause for the arrest, no reasonable jury could conclude that the search pursuant to that arrest was unreasonable in violation of the Fourth and Fourteenth Amendments. I will therefore grant summary judgment to the Defendants, and deny summary judgment to Watley, on Watley's claims regarding the roadside arrest and search of his pockets.

### 2. Seizure and Search of Watley's Vehicle

Since the arrest was valid, the Troopers were also authorized to conduct an inventory search of Watley's vehicle. "[A]n inventory search may be 'reasonable' under the Fourth Amendment even though it is not conducted pursuant to a warrant based upon probable cause." *Colorado v. Bertine*, 479 U.S. 367, 371 (1987). The Supreme Court has observed that "inventory procedures serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." *Bertine*, 479 U.S. at 372 (citing *South Dakota v. Opperman*, 428 U.S. 364 (1976)). However, in carving out the inventory search exception to the warrant requirement, the Supreme Court has relied on the notion that, "when inventory searches are conducted in accordance with established police department rules or policy the officer does not make a discretionary, and perhaps arbitrary, determination to search." *United States v. Frank*, 864 F.2d 992, 1003 (3d Cir. 1988)(citing *Opperman*, 428 U.S. at 383 (Powell, J., concurring)); *see also Bertine*, 479 U.S. at 376-77 (Blackmun, J., concurring) (finding it necessary to "write separately to underscore the importance of having such inventories conducted only pursuant to standardized police procedures. The underlying rationale for allowing an inventory search exception to the Fourth Amendment warrant rule is that police officers are not vested with discretion to determine the scope of an inventory search."). "The policy or practice governing inventory searches should be designed to produce an inventory." *Florida v. Wells*, 495 U.S. 1, 3 (1990). Here, unlike in *Bertine*,

*Opperman*, or *Frank*, there is no evidence of any police department policy governing inventory searches, a document listing the contents of Watley's vehicle, or any results of the search, such as the money Watley claimed to have left in the car. (Doc. 29-4 at 44:12-45:45:25.) Further, the Dashcam Video shows one Trooper apparently handing an object (which Defendants state is Watley's camera) found in the car back to Watley without writing anything down. (Doc. 31, Ex. A; Doc. 42, p. 17.) On the other hand, both Trooper Nilon and Trooper Felsman testified that the vehicle was searched pursuant to department regulations, and Trooper Nilon testified that no inventory sheet was created because no property was taken into custody. (*Id.*) Defendants submitted no evidence other than this contested testimony to prove the existence or scope of the department's regulations governing inventory searches. Viewed in the light most favorable to Watley, this raises a genuine issue of material fact whether the search of Watley's vehicle was conducted in accordance with regulations which did not vest the Troopers with discretion over the search. Viewed in the light most favorable to Defendants, the same genuine issue of material fact remains. Because the determination whether a valid inventory search was performed depends on the factfinder's assessment of the Troopers' credibility, this issue should be left for a jury to decide. I will therefore deny summary judgment to both parties on this claim.

### 3. Seizure of Watley on May 12, 2016

Watley also alleges that he was "handcuffed and shackled [] upon leaving the jail." (Doc. 1 at ¶ 18.) Defendants argue this claim should be interpreted to relate only to when Watley physically left the jail for the hearing, at which time he was still subject to Magistrate Judge Cooper's commitment order. In contrast, Watley appears to have meant this statement to allege that he was handcuffed while being transported from the Magistrate Judge's office to the impound lot after Magistrate Judge Cooper signed the prisoner release on May 12, 2016: Watley's Statement of Undisputed Facts in support of his Motion for Summary Judgment cites Trooper Felsman's testimony to support the proposition that Watley was handcuffed when "he had been released

from jail." (Doc. 29 at ¶ 19.) The cited testimony unambiguously shows that Watley was handcuffed on the way to the impound lot. (*See* Doc. 29-3 at 62:11-13.) Defendants point out that Watley does not explicitly allege in his Complaint that he was handcuffed while no longer subject to the commitment order, and argue that this claim should therefore be dismissed, but have made no motion to that effect. (Doc. 42, p. 9; Doc. 46, p. 11.) In any case, Watley's allegation meets the notice pleading requirement of Rule 8.

A complaint need only include "a short and plain statement of the claim showing that the pleader is entitled to relief," the purpose of which is to "'give the defendant fair notice of what the [] claim is and the grounds upon which it rests.'" *See* Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007)(quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Rather than requiring detailed factual allegations, this standard demands only that the factual allegations in a complaint are enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true. *Id.* at 555. "Specific facts are not necessary" where allegations in a complaint afford a defendant sufficient notice of a plaintiff's claims. *Wilson v. City of Phila.*, 415 Fed.App'x. 434, 435-36 (3d Cir. 2011)(quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)).

In *Erickson*, the Supreme Court found the petitioner's complaint sufficient to comply with Rule 8 where it stated, among other things, that a prison doctor withheld medication from the petitioner "shortly after" he had commenced a treatment program that would take one year. *Erickson*, 551 U.S. at 94. In this case, taken as true, the alleged facts state that Trooper Felsman improperly handcuffed Watley after he had left the jail on May 12. This is similar to the *Erickson* petitioner's allegation that his medication was withheld "shortly after" he commenced his treatment program. Given Trooper Felsman's ready admission that he handcuffed Watley "during the transport from the magistrate to the impounding lot" on May 12, Defendants were easily able to ascertain the extent of Watley's claim through reviewing Trooper Felsman's actions

13

on that date after Watley left the jail and preparing their defense accordingly. (Doc. 29-3 at 62:11-13.) Defendants also received further notice of the specific details of this claim as Watley made additional filings. *See Erickson*, 551 U.S. at 94 (noting that the petitioner's later filings had added more specific allegations to his adequate complaint). Defendants admitted to Watley's statement of fact that he was handcuffed on May 12, 2016, when "he had been released from jail," which cites to Trooper Felsman's testimony admitting Watley was handcuffed *after* he had been released by the Magistrate Judge. (Doc. 29 at ¶ 19; Doc. 35 at ¶ 19.) If Defendants were truly not on notice that Watley's claim included this incident, they would have denied this statement of fact in their response and argued that the claim should be dismissed. Instead, they admitted to the statement and failed to raise any concern about the relevant claim until filing a brief in support of their own Motion for Summary Judgment. Therefore, I find that Watley's Complaint gave Defendants sufficient notice of his claim to comply with the requirements of Rule 8.

This leaves the question of how to resolve this claim for purposes of the instant cross-motions for summary judgment. Because the claim is sufficient as stated, and Defendants have admitted to the corresponding statement of fact, I will deny Defendants' Motion for Summary Judgment on this claim. Further, Defendants have offered no defense or disputed any aspect of Watley's claim relating to this action by Trooper Felsman, other than challenging his statement of the claim. Since Watley's Complaint is sufficient, this means that Defendants have raised no genuine dispute of material fact regarding this claim. Therefore, unless Trooper Felsman is entitled to qualified immunity, Watley will be granted summary judgment on this claim.

### 3. Qualified Immunity

Trooper Felsman is not entitled to qualified immunity on this issue. Whether qualified immunity exists is a question of law to be determined by the Court. *Orsatti*, 71 F.3d at 483. Where the facts are not in dispute, the district court may decide whether the government official is shielded by qualified immunity. *Id.* Here, as

14

discussed above, the relevant facts have not been disputed by Defendants.

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). The Third Circuit has remarked that qualified immunity provides "ample protection to all but the plainly incompetent or those who knowingly violate the law." *Blackhawk v. Pa.*, 381 F.3d 202, 215 (3d Cir. 2004). "In considering the applicability of qualified immunity, courts engage in a two-pronged examination." *Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 637 (3d Cir. 2015). First, a court decides "whether the facts that a plaintiff has shown make out a violation of a constitutional right." *Id.* If at the conclusion of this analysis a court finds that no constitutional violation took place, then the court must enter judgment in the defendant's favor. However, if a constitutional violation is found, a court must then determine "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). If the right violated was "clearly established," then the official is not entitled to immunity.

"To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle*, 566 U.S. at 664. "[E]xisting precedent must have placed the statutory or constitutional question beyond debate" for a right to be clearly established. *Id.* The Supreme Court does "not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Taylor*, 135 S. Ct. at 2044. Essentially, "in light of pre-existing law the unlawfulness must be apparent." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). This may be the case "despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct violated constitutional rights." *Id.* at 740 (citation omitted).

The Fourth Amendment guarantees an individual's right to be free from unreasonable seizures. U.S. Const. amend. IV. There is no per se rule that handcuffing an individual constitutes a violation of his Fourth Amendment rights. *Baker v. Monroe Township*, 50 F.3d 1186, 1193 (3d Cir. 1995). However, the use of handcuffs must be "justified by the circumstances." *Id.* Here, Defendants offer no explanation as to why Watley was handcuffed after Magistrate Judge Cooper ordered his release, and none is apparent from the record. Watley was not under arrest, he did not apparently pose any threat to Trooper Felsman's safety, and nothing in the record suggests that Trooper Felsman had probable cause, or even reasonable suspicion, to justify placing him in handcuffs. I therefore find that this seizure of Watley was unreasonable, and, consequently, that it violated his Fourth Amendment rights, satisfying the first prong of the qualified immunity analysis.

Next, I must determine whether Watley's right to be free from handcuffs during transport by police after he was released from custody was clearly established such that Trooper Felsman was on notice that his actions would violate Watley's constitutional rights. When Trooper Felsman handcuffed Watley, the law was clear that the use of handcuffs is not permitted as a matter of course, but, as stated *supra*, must be "justified by the circumstances." *Hall v. Raech*, 677 F.Supp.2d 784, 799 (E.D.Pa. 2010)(citing *Baker*, 50 F.3d at 1193); *see also United States v. Acosta-Colon*, 309 Fed.App'x. 651, 653-54 (3d Cir. 2009)(use of handcuffs as part of a *Terry* stop not justified in the absence of "*some* specific fact or circumstance that could have supported a reasonable belief that the use of such restraints was necessary to carry out the legitimate purposes of the stop"); *Smoak v. Hall*, 460 F.3d 768, 781-82 (6th Cir. 2006)(use of guns, handcuffs, and detention in a police cruiser was unreasonably intrusive where officers possessed only a "bare inference" that plaintiffs had been involved in a "possible robbery" and where plaintiffs had obediently complied with officers' orders). Here, the circumstances under which Watley was handcuffed did not even rise to the level of justification present in these cases. There is no suggestion that

Trooper Felsman was concerned for his safety, and Watley had been explicitly released from custody. A reasonable law enforcement officer in Trooper Felsman's position would have known that handcuffing an individual requires some justification under the Fourth Amendment. Defendants have offered none. At bottom, no case stands for the proposition that a police officer may handcuff an individual who has been released from custody, and who poses no threat to the officer's safety, simply to transport the individual from one place to another. I therefore conclude that the handcuffing of Watley violated his clearly established constitutional right to be free from seizure by law enforcement absent any justification.

I will therefore grant summary judgment to Watley on the question of liability solely as it relates to Trooper Felsman's handcuffing of him during the transport to the impound lot, and will order a trial to determine damages.

### C. Count IV: Assault and Battery

Watley also brings a state law claim against Trooper Felsman for assault and battery. "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C.A. § 1367(a). Under the relevant Pennsylvania law, "an assault is an act intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such contact, and [] the other is thereby put in such imminent apprehension. *Betz v. Satteson*, 259 F.Supp.3d 132, 178 n. 214 (M.D.Pa. 2017)(quoting *Szydlowski v. City of Phila.*, 134 F.Supp. 2d 636, 639 (E.D.Pa. 2001)). "A battery, on the other hand, occurs when a person acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such contact, and [] a harmful contact with the person of the other directly or indirectly results." *Id.*

Pursuant to Article 1, Section 11 of the Pennsylvania Constitution, the General

Assembly of Pennsylvania declared that "the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity." 1 Pa.C.S. § 2310. Pennsylvania courts have held that "when an employee of a Commonwealth agency was acting within the scope of his or her duties, the Commonwealth employee is protected by sovereign immunity from the imposition of liability for intentional tort claims." *Minor v. Kraynak*, 155 A.3d 114, 121-122 (Pa. Cmwlth. Ct. 2017)(quoting *La Frankie v. Miklich*, 618 A.2d 1145, 1149 (Pa. Cmwlth. Ct. 1992)). To determine whether a state employee is protected by sovereign immunity, a court considers (1) whether the employee was acting within the scope of his or her employment; (2) whether the alleged act which causes injury was negligent and damages would be recoverable but for the availability of the immunity defense; and (3) whether the act fits within one of the nine exceptions to sovereign immunity.[7] *Id.* Watley does not argue that the Commonwealth waived immunity for the alleged conduct underlying his assault and battery claims, and neither assault nor battery falls within one of these nine exceptions. *Garcia v. Hibson*, Civ. No. 11-4073, 2011 WL 4901358, at *5 (E.D.Pa. Oct. 14, 2011). Instead, Watley contends that Trooper Felsman is not protected by sovereign immunity for his intentional acts because the actions underlying the assault and battery claims were outside the scope of his duties.

"Conduct of an employee is within the scope of employment only if: (1) it is of a kind that the employee is employed to perform; (2) it occurs substantially within the authorized time and space limits; (3) it is calculated, at least in part, by a purpose to serve the employer; and (4) if force is intentionally used by the employee against

---

[7] These nine exceptions are: (1) vehicle liability; (2) medical-professional liability; (3) care, custody or control of personal property; (4) Commonwealth real estate, highways and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody or control of animals; (7) liquor store sales; (8) National Guard activities; and (9) toxoids and vaccines. 42 Pa.C.S.A. § 8522.

another, it is not unexpected by the employer." *Garcia,* 2011 WL 4901358, at *5. Trooper Felsman's actions during the roadside search and seizure of Watley fall squarely within the scope of his employment: (1) Trooper Felsman was directly authorized by statute to make the arrest; (2) he made the arrest during his shift and on a highway he was patrolling; (3) his action was intended to serve the state of Pennsylvania by ensuring that Watley, an out of state resident, responded to the traffic citations; and (4) the *de minimis* force employed in arresting Watley was of the type and scope expected by the state in employing a police force. Trooper Felsman is therefore entitled to sovereign immunity on this claim as it relates to his actions on May 11, 2016. However, Defendants have not shown that handcuffing Watley to transport him to the impound lot on May 12, 2016, was within the scope of Trooper Felsman's employment. Although using handcuffs generally may fall into the category of the kind of work Trooper Felsman is employed to perform, using handcuffs without justification is not. It is unclear how handcuffing Watley to transport him to his car served the interests of the state, since Watley had been released from custody and there is no evidence that he posed a safety threat to Trooper Felsman, himself, or others. Finally, the state, in employing a police force, does not expect them to employ even the *de minimis* force involved in handcuffing an individual where there is no justification for the use of such force. Trooper Felsman is therefore not entitled to sovereign immunity for his actions on May 12, 2016. Defendants' motion for summary judgment as it relates to these actions will be denied, and this issue will be determined by a jury at trial.

### D. Count II: Excessive Force

"To state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a 'seizure' occurred and that it was unreasonable." *Kopec v. Tate,* 361 F.3d 772, 777 (3d Cir. 2004). Defendants do not contest that Watley was seized, so I will evaluate only the second prong of this test. A court evaluates a claim of excessive force by considering the objective

reasonableness of the force used, given the specific facts and circumstances confronting the officer at the time of the incident in question. *Graham v. Conor*, 490 U.S. 386, 397 (1989); *Estate of Smith v. Marasco*, 318 F.3d 497, 515 (3d Cir. 2003). This inquiry requires a "careful balancing of the nature and quality of the intrusion on an individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (internal quotation omitted).

In deciding whether the challenged conduct constitutes excessive force, a court must determine the objective "reasonableness" of the alleged conduct, considering "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Carswell v. Borough of Homestead*, 381 F.3d 235, 240 (3d Cir. 2004). Other factors include "the duration of the [officer's] action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." *Green v. New Jersey State Police*, 246 Fed.App'x. 158, 161 (3d Cir. 2007)(internal quotation omitted). Even where a plaintiff is not resisting arrest, the use of some *de minimis* force to effect the arrest is reasonable. *See McClure v. City of Harrisburg*, Civ. No. 14-0958, 2014 WL 4828869, at *7 (M.D.Pa. Sept. 29, 2014)(finding that, where plaintiff failed to allege facts that showed more than a *de minimis* use of force that would make the officers' use of force unreasonable, plaintiff's excessive force claim should be dismissed). Physical injury is relevant, but is not a prerequisite of an excessive force claim. *Sharrar*, 128 F.3d at 822.

"Whether an action constitutes excessive force is typically a question for a jury." *Kopec*, 361 F.3d at 776-77. However, where a video record exists which contradicts one party's version of events such that no reasonable jury could believe it, summary judgment may be proper. *See Scott v. Harris*, 550 U.S. 372, 378-79 (2007).

Here, the Dashcam Video depicts nearly the entire arrest of Watley. I will therefore assess Watley's excessive force claim, to the extent possible, "in the light

depicted by the videotape." *Scott*, 550 U.S. at 381. The Dashcam Video shows several Troopers clustered around the driver's side door when Watley opens it. (Doc. 31, Ex. A.) Watley exits the car and stands up on his own, surrounded by the officers, and the officers use their hands to turn Watley around, place his hands on top of the car, and then move his hands behind his back to handcuff him. *Id.* Watley's body is moved closer to the car as a result of his hands being placed on the car's roof, but there appears to be no impact as his body reaches the car. *Id.* While being turned around and handcuffed, Watley does not speak or react in any way that suggests he is uncomfortable or in pain. *Id.* Watley admits that his only physical injuries from the entire encounter were indentations on his wrist from the handcuffs, and that he did not tell anyone the handcuffs were too tight. (Doc. 42-2 at 38:1-9.)

After handcuffing Watley, the Dashcam Video shows that the Troopers walk him back to Trooper Felsman's car, and apparently search his pockets. *Id.* This search and the attachment of the leg irons both occur off camera. *Id.* Watley does not allege that the leg irons caused him any bruising, admits he did not respond when Trooper Felsman asked him whether they were too tight, and alleges only that an unidentified trooper "kicked over" his leg to put the leg irons on. (*Id.* at 39:3-40:11; 47:11-25.) Viewing these facts in the light most favorable to Watley, since these events occurred off camera, I will assume that Watley's statement that his leg was "kicked over" is accurate. Watley does not allege any physical injury, including pain, bruising, or discomfort, arising from this action. (*Id.* at 40:6-11.)

In addition, as discussed above, it is an undisputed fact that Trooper Felsman handcuffed Watley to transport him to the impound lot on May 12, 2016.

Finally, Watley alleges that he suffered psychological injuries from the entire incident, including not wanting to travel, sleepless nights, and cold sweats. (Doc. 42-2 at 48:15-50:18.) Watley admits he has not sought professional help for these psychological injuries, but states that this is because he cannot afford to do so. (*Id.* at 49:14-17.) Viewing these facts in the light most favorable to Watley, I will assume

that Watley's testimony is accurate and that he suffered these psychological injuries as a result of the Troopers' actions.

I cannot conclude that any of the above alleged injuries create a genuine dispute of material fact regarding whether the force used by the Troopers to arrest Watley on May 11, 2016, was excessive. Here, some of the *Carswell* and *Green* factors cited above weigh in Watley's favor: the underlying traffic citations for which he was arrested were of the least "severe" variety of crimes possible, he did not resist arrest, there was no evidence to suggest he might be armed, and the Troopers greatly outnumbered him and did not have anyone else to contend with. However, several of Watley's actions did implicate the Troopers' safety, including (1) parking near the white line on the side of the highway so that Trooper Felsman could not approach the driver's side window safely; (2) refusing to hand his documents out of the car, which Trooper Felsman testified could be an attempt to "tie up" his hands with writing down the information and direct his attention down at a writing pad rather than keeping it focused on Watley;[8] (3) motioning for Trooper Felsman to stand in front of the car to look at his license through the windshield; and (4) not rolling down the window so that Trooper Felsman was obligated to put his face close to the tinted glass to see inside the car. (*See* Doc. 29-3 at 78:14-21; Doc. 31, Ex. A.) In addition, the arrest took place on the shoulder of a busy highway, and the Troopers had a safety interest on behalf of both themselves and Watley in keeping Watley as close to the car as possible to avoid having him or one of the Troopers cross over into the lanes of high speed traffic. Finally, Watley has alleged no physical injuries other than indentations on his wrists, and his alleged psychological injuries are patently incommensurate with the amount of force used by the Troopers to arrest him. Given these factors, the Troopers'

---

[8] Of course, with the benefit of hindsight, I do not suggest that this may have been Watley's actual intent. However, at the time, Trooper Felsman was unable to verify that Watley did not pose a threat to his safety, and his training required that he be aware of this possibility when dealing with an unknown individual.

use of *de minimis* force to arrest Watley on May 11, 2016, was objectively reasonable, and a reasonable jury could not disagree. I will therefore grant summary judgment to Defendants on this claim as it relates to the events of that date.

Defendants are not, however, entitled to summary judgment on Watley's claims relating to the events of May 12, 2016. As discussed *supra*, Defendants have admitted that Watley was handcuffed after he was released from jail and have offered no justification whatsoever for this action. On these facts, every relevant excessive force factor weighs in Watley's favor: there was no underlying crime to justify an additional seizure once Magistrate Judge Cooper ordered that Watley be released; no evidence that Watley posed a safety threat; no evidence that he resisted arrest (because he was not under arrest); no evidence that he was armed (and in fact strong evidence that he was not, since he had just come from jail); and he was alone. Under these circumstances, even the *de minimis* force used to put the handcuffs on Watley was excessive because there was no justification for it. I will therefore deny summary judgment to Defendants on this count as it relates to the events of May 12, 2016, and this issue will be preserved for trial.

### E. Count III: First Amendment Retaliation

Watley also raises a First Amendment retaliation claim. A plaintiff alleging retaliation in violation of the Constitution must satisfy three elements: (1) that he engaged in constitutionally protected activity, *Rauser v. Horn*, 241 F.3d 330, 330 (3d Cir. 2001); (2) that he suffered an adverse action "sufficient to deter a person of ordinary firmness from exercising his First Amendment rights," *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000)(quoting *Suppan v. Dadonna*, 203 F.3d 228 (3d Cir. 2000))(further internal quotations omitted); and (3) that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to" take the adverse action against him, *Rauser*, 241 F.3d at 333-34 (quoting *Mt. Healthy Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). Since Watley's First Amendment claim is based on a retaliatory prosecution theory, he is also required to allege and prove that Trooper

Felsman's pursuit of the underlying criminal charge was unsupported by probable cause. *Hartman v. Moore*, 547 U.S. 250, 255-256 (2006). As discussed *supra*, probable cause existed for Trooper Felsman to arrest Watley. Therefore, Watley is unable to meet the last element of his First Amendment retaliation claim, and summary judgment will be granted to the Defendants.

### F. Count V: False Arrest/Imprisonment[9]

Watley further alleges claims for false arrest and false imprisonment against Trooper Felsman under both the Fourth Amendment and state law. "The proper inquiry in a section 1983 claim based on false arrest [] is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995)(quoting *Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir. 1988)). A false imprisonment claim under § 1983 is based on the Fourteenth Amendment protection against deprivations of liberty without due process of law. *Groman*, 47 F.3d at 636 (citing *Baker v. McCollan*, 443 U.S. 137, 142 (1979)). Where a § 1983 claim for false imprisonment is based on an arrest made without probable cause, it is grounded in the Fourth Amendment's guarantee against unreasonable seizures. *Id.* (citing *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994)). Like a § 1983 claim for false arrest, a § 1983 claim for false imprisonment under the Fourth and Fourteenth Amendments cannot be established if the detention in question resulted from an arrest based on probable cause. *Groman*, 47 F.3d at 636 (citing *Baker*, 443 U.S. at 143-44); *see also Barna*, 42 F.3d at 819(holding that an arrest is justified where probable cause exists "as to any offense that could be charged under the circumstances."). Here, as discussed *supra*, there is no genuine dispute of material fact that probable cause existed to arrest Watley. Therefore, Watley

---

[9] Watley asserts that Defendants never moved for summary judgment on "a 14th Amendment claim based on false imprisonment." (Doc 43, p. 2 n. 2.) Defendants briefed the issue of probable cause and an alleged Due Process violation. (Doc. 42, pp. 8-10.)

cannot establish a § 1983 claim that he was subjected to false imprisonment or false arrest, and summary judgment will be granted to Defendants and denied to Watley on this issue.

Similarly, under Pennsylvania state law, "[t]he elements of false arrest/false imprisonment are: (1) the detention of another person (2) that is unlawful." *Manley v. Fitzgerald*, 997 A.2d 1235, 1241 (Pa. Cmwlth. Ct. 2010); *see also Commonwealth v. Green*, 149 A.3d 43, 53 (2016); 18 Pa.C.S.A. § 2903. "An arrest based upon probable cause would be justified, regardless of whether the individual arrested was guilty or not." *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994). Since Watley's arrest was supported by probable cause, his state law claim against Trooper Felsman must fail for the same reason that his related § 1983 claim failed.

In addition, Trooper Felsman is entitled to sovereign immunity against the state law claims for the same reasons set out *supra* at pages 18-19. Defendants are therefore entitled to summary judgment on Watley's state law claims for false arrest and imprisonment.

### G. Count VI: Malicious Prosecution

Watley alleges a claim for malicious prosecution against Trooper Felsman under both the Fourth Amendment and state law. "It is well-settled that "[t]o prove malicious prosecution [] a plaintiff must show that: (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003). In order for Watley to prevail on his malicious prosecution claims under the Fourth Amendment, he must satisfy each of these elements. *Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009). Because, as discussed *supra*, probable cause existed for Watley's arrest, he is unable to satisfy the third element of this claim.

In addition, Watley's arguments in support of the fourth element of this claim are unavailing. Watley offers as evidence of malice (1) that Trooper Felsman was "agitated" by Watley's sign and asked that someone take a picture of it and send it to his cell phone; (2) that Trooper Felsman arrested Watley rather than giving him the usual ten days to respond to the tickets; (3) that Trooper Felsman erroneously told the Pike County Jail personnel that Watley was a sovereign citizen; and (4) that Trooper Felsman picked Watley up from jail, "so clearly, he lacked the belief in the propriety of the prosecution." (Doc. 43, p. 7.) First, the Dashcam Video shows that Trooper Felsman was unhappy, and perhaps "agitated," with Watley's refusal to put down his window or hand out his documents, but includes Trooper Felsman stating that Watley does have the right to remain silent. (Doc. 31, Ex. A.) Agitation with Watley's lack of cooperation is not equivalent to agitation with his exercise of his First Amendment rights. Further, Trooper Felsman was taking Watley directly to the hearing, so it was rational for him to request a picture of the sign to be shown in the hearing, and it is unclear why Watley believes an inference of malice should be drawn from this request. Second, Trooper Felsman was authorized by 75 Pa. C.S.A. §§ 6304 and 6305 to arrest Watley and take him directly to the Magistrate Judge. His decision to do so does not give rise to an inference of malice, given Watley's refusal to comply with the Troopers' instructions throughout the entire incident and his failure to confirm, verbally or nonverbally, whether he would respond to the citations. (Doc. 31, Ex. A.) *See Illinois v. Lafayette*, 462 U.S. 640, 647 (1983)("The reasonableness of any particular governmental activity does not necessarily or invariably turn on the existence of alternative 'less intrusive' means."). Third, even if Trooper Felsman was mistaken in labeling Watley a "sovereign citizen," this would be a reasonable mistake. Sovereign citizens "believe they don't have to answer to any government authority, including courts, taxing entities, motor vehicle departments, or law enforcement." *Domestic Terrorism: The Sovereign Citizen Movement*, Federal Bureau of Investigation, available at https://archives.fbi.gov/archives/news/stories/2010/april/

26

sovereigncitizens_041310/domestic-terrorism-the-sovereign-citizen-movement.
Watley's refusal to comply with the Troopers' requests is consistent with this sort of
ideology. In addition, Watley's own testimony suggests that, if he is not affiliated with
the sovereign citizens movement, he does share some of their views:

Q: Do you affiliate yourself with sovereign citizens in any way?

A: No, no, no. We are all sovereign. Every human being is sovereign.

(Doc. 42-2 at 24:6-9.) Given Watley's behavior and testimony, it would be
unreasonable to conclude that Trooper Felsman's statement was an indication of
malice rather than an attempt to provide a short explanation to the jail personnel of
what to expect from Watley's behavior. Finally, Watley provides no explanation, and
I am unable to imagine one, why Trooper Felsman's transporting Watley to pick up
his car after the hearing would give rise to any reasonable inference of malice.
Therefore, Watley's Fourth Amendment claim for malicious prosecution fails on two
elements, and Watley will be denied summary judgment on this claim while
Defendants are entitled to summary judgment.

The Pennsylvania Supreme Court has held that the 1980 Dragonetti Act
replaced the common law malicious prosecution cause of action with the statutory
Wrongful Use of Civil Proceedings cause of action. *Northwestern Nat. Cas. Co. v.
Century III Chevrolet, Inc.*, 863 F.Supp. 247, 249 (W.D.Pa. 1994)(citing *Matter of
Larsen*, 532 Pa. 326, 440 (1992)); *see also* 42 Pa.C.S.A. §§ 8351-8354. The statutory
cause of action provides that "[a] person who takes part in the procurement, initiation,
or continuation of civil proceedings against another is subject to liability to the other
for wrongful use of civil proceedings [if]: (1) he acts in a grossly negligent manner or
without probable cause and primarily for a purpose other than that of securing the
proper discovery, joinder of parties or adjudication of the claim in which the
proceedings are based; and (2) the proceedings have terminated in favor of the person
against whom they are brought." 42 Pa.C.S.A. § 8351. Here, as discussed *supra*,
Watley's arrest was supported by probable cause and it would be unreasonable to

conclude that he acted for an improper purpose. Watley's state law claim therefore fails as well. Trooper Felsman is also entitled to sovereign immunity against Watley's state law claim for the same reasons set forth *supra* at pages 18-19. Therefore, Watley will be denied summary judgment on this claim and Defendants' Motion for Summary Judgment will be granted.

### H. Count VII: Abuse of Process[10]

Watley further alleges that Trooper Felsman's actions constituted abuse of process under both the Fourth Amendment and state law. To obtain relief on an abuse of process claim brought pursuant to 42 U.S.C. § 1983, a plaintiff must show a Fourth Amendment violation in addition to the common law elements for abuse of process. *Walters v. Pennsylvania State Police*, Civ. No. 13-2275, 2014 WL 3908150, at *11 (M.D.Pa. Aug. 11, 2014)(citations omitted). Because, as discussed *supra*, Watley has failed to show a Fourth Amendment violation, he cannot show a federal abuse of process violation under §1983.

Even if Watley were able to show a Fourth Amendment violation, he would still be unable to survive summary judgment on both of his abuse of process claims. The elements of an abuse of process claim under Pennsylvania and federal law require that a prosecution is initiated legitimately and thereafter used for an improper purpose. *See Walters*, 2014 WL 3908150, at *11 (quoting *Williams v. Fedor*, 69 F.Supp.2d 649, 673(M.D.Pa. 1999), *aff'd mem.*, 211 F.3d 1263 (3d Cir. 2000) for the proposition that "a section 1983 claim for malicious abuse of process lies where prosecution is initiated legitimately and thereafter is used for a purpose other than that intended by the law."); *Reis v. Barley, Snyder, Senft & Cohen, LLC*, 426 Fed.App'x. 79, 83 (3d Cir. 2011)(quoting *Rosen v. Am. Bank of Rolla*, 627 A.2d 190, 192 (Pa. Super. Ct. 1993) to state that the elements of abuse of process under Pennsylvania law are that the

---

[10] Watley asserts that Defendants never moved for summary judgment on his abuse of process claim. (Doc 43, p. 2 n. 2.) However, Defendants briefed both the issues surrounding the arrest of Watley and the sovereign immunity issue. (Doc. 42, pp. 13-15.)

defendant "'(1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed[,] and (3) harm has been caused to the plaintiff.'"). In short, "abuse of process is 'concerned with a perversion of a process *after it is issued*,' while '[m]alicious use of civil process has to do with the wrongful *initiation* of such process.'" *Reis*, 426 Fed.App'x. at 83 (quoting *McGee v. Feege*, 535 A.2d 1020, 1023 (1987)) (emphasis in *Reis*). The essence of an abuse of process claim is that proceedings are used for a purpose not intended by the law. *Rosen v. Tesoro Petroleum Corp.*, 582 A.2d 27, 32 (Pa. Super. Ct. 1990), *appeal denied*, 592 A.2d 1303 (1991). There is no cause of action for abuse of process if the claimant, even with bad intentions, merely carries out the process to its authorized conclusion. *Douris v. Schweiker*, 229 F.Supp.2d 391, 404 (E.D.Pa. 2002), *aff'd sub nom. Douris v. Rendell*, 100 Fed.App'x. 126 (3d Cir. 2004); *Shaffler v. Stewart*, 473 A.2d 1017, 1019 (Pa. 1984).

Here, Watley alleges facts related to the proceedings and outcome of the hearing in an apparent attempt to meet the requirement that an abuse of process claim relate to the implementation of a process after it is started. (Doc. 1 at ¶ 48.) As explained in note 6, *supra*, Watley has no cause of action against Trooper Felsman for subsequent events which would not have occurred "but for" Trooper Felsman arresting him, where Trooper Felsman had no personal involvement in those events. Therefore, Watley's only claims against Trooper Felsman relate to his initiation of the proceedings by arresting Watley. Watley alleges that this constitutes abuse of process because, since the forms on which the citations were printed provided ten days to respond, Trooper Felsman was required to give Watley the ten days rather than arresting him. (Doc. 1 at ¶¶ 45, 47.) Watley cites no support for this argument, which directly conflicts with the Pennsylvania statute authorizing state police to arrest anyone who violates the Motor Vehicle Code in their presence. 75 Pa. C.S.A. § 6304(a). I am unaware of any precedent, and Watley has provided none, that suggests that a time period generally printed on every traffic citation form is binding on an officer despite direct evidence

29

of contrary legislative intent. Further, even if this argument had merit, it does not move the allegations beyond the scope of Trooper Felsman's initiation of the proceedings against Watley. Finally, Trooper Felsman is entitled to sovereign immunity against Watley's state law claim for abuse of process for the same reasons discussed *supra* at pages 18-19. Defendants are therefore entitled to summary judgment on both Watley's federal and state abuse of process claims.

## IV. Conclusion

For the above stated reasons, summary judgment will be **GRANTED** to Defendants as to the seizure and search of Watley's person by Trooper Felsman on May 11, 2016 (Count I, in part); excessive force as to the events of May 11, 2016 (Count II, in part); First Amendment retaliation (Count III); Assault and Battery claims relating to the events of May 11, 2016 (Count IV, in part); false arrest/false imprisonment (Count V); malicious prosecution (Count VI); abuse of process (Count VII); and the seizure and search of Watley's person by Trooper Nilon on May 11, 2016 (Count VIII). Summary judgment will be **GRANTED** to Watley on Count I as it relates to the seizure of Watley on May 12, 2016. Both parties' motions for summary judgment will be **DENIED** in all other respects.

An appropriate order follows.


 March 29, 2018                                      /s/ A. Richard Caputo
Date                                                 A. Richard Caputo
                                                     United States District Judge