## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOSEPH J. WATLEY,** | : | **No. 3:16-CV-2059** |
| **Plaintiff** | : | |
| | : | **(Judge Caputo)** |
| **v.** | : | |
| | : | **Electronically Filed Document** |
| **MICHAEL FELSMAN, DANIEL** | : | |
| **NILON, AND JAMES SOHNS,** | : | *Complaint Filed 10/13/16* |
| **Defendants** | : | |

## DEFENDANTS' PROPOSED JURY INSTRUCTIONS

Defendants, Corporal Felsman, Corporal Nilon, and Trooper Sohns, of the Pennsylvania State Police ("PSP"), through counsel, hereby file these proposed jury instructions:

### 1.1 Preliminary Instructions — Introduction; Role of Jury

Now that you have been sworn, I have the following preliminary instructions for your guidance as jurors in this case.

You will hear the evidence, decide what the facts are, and then apply those facts to the law that I will give to you.

You and only you will be the judges of the facts. You will have to decide what happened. I play no part in judging the facts. You should not take anything I may say or do during the trial as indicating what I think of the evidence or what your verdict should be. My role is to be the judge of the law. I make whatever legal decisions have to be made during the course of the trial, and I will explain to you the legal principles that must guide you in your decisions. You must follow that law whether you agree with it or not.

**Third Circuit Model Instruction 1.1**

## 1.2  Preliminary Instructions  — Description of Case; Summary of Applicable Law

In this case, Mr. Watley claims that Corporal Felsman violated his constitutional right to be free from excessive force committed an assault and battery against him by providing him a courtesy ride to his vehicle when there were no other means for him to reach his vehicle and that Corporal Nilon and Trooper Sohns violated his constitutional right against unreasonable searches and seizures by ensuring all valuables were removed from his vehicle prior to its keys being handed over to a towing company because it had to be towed.

Corporal Felsman, Corporal Nilon, and Trooper Sohns deny those claims.  I will give you detailed instructions on the law at the end of the case, and those instructions will control your deliberations and decision.

**Third Circuit Model Instruction 1.2**

### 1.3   Preliminary Instructions — Conduct of the Jury

Now, a few words about your conduct as jurors.

First, I instruct you that during the trial and until you have heard all of the evidence and retired to the jury room to deliberate, you are not to discuss the case with anyone, not even among yourselves.  If anyone should try to talk to you about the case, including a fellow juror, bring it to my attention promptly.  There are good reasons for this ban on discussions, the most important being the need for you to keep an open mind throughout the presentation of evidence.  I know that many of you use cell phones, smart phones [like Blackberries and iPhones], and other portable electronic devices; laptops, netbooks, and other computers both portable and fixed; and other tools of technology, to access the internet and to communicate with others.  You also must not talk to anyone about this case or use these tools to communicate electronically with anyone about the case.  This includes your family and friends.  You may not communicate orally with anyone about the case on your cell phone, smart phone, or portable or fixed computer or device of any kind; or use these devices to communicate electronically by messages or postings of any kind including e-mail, instant messages, text messages, text or instant messaging services [such as Twitter], or through any blog, website, internet chat room, or by way of any other social networking websites or services [including Facebook, MySpace, LinkedIn, and YouTube].

If any lawyer, party, or witness does not speak to you when you pass in the hall, ride the elevator, or the like, remember it is because they are not supposed to talk or visit with you, either.  That is why you are asked to wear your juror tags.  It shows that you are someone who is not to be approached in any way.

Second, do not read or listen to anything related to this case that is not admitted into evidence.  By that I mean, if there is a newspaper article or radio or television report relating to this case, do not read the article or watch or listen to the report.  In addition, do not try to do any independent research or investigation on your own on matters relating to the case or this type of case.  Do not do any research on the internet, for example.  You are to decide the case upon the evidence presented at trial.  In other words, you should not consult dictionaries or reference materials, search the internet, websites, blogs, or use any other electronic tools to obtain information about this case or to help you decide the case.  Please do not try to find out information from any source outside the confines of this courtroom.

Again, do not reach any conclusion on the claims or defenses until all of the

evidence is in.  Keep an open mind until you start your deliberations at the end of the case.

Finally, if any member of the jury has a friend or family member who is in attendance at this public trial, that visitor must first register with my Clerk because special rules will govern their attendance.  You may not discuss any aspect of this trial with the visitor, nor may you permit the visitor to discuss it with you.

**Third Circuit Model Instruction 1.3**

## 1.4    Preliminary Instructions — Bench Conferences

During the trial it may be necessary for me to talk with the lawyers out of your hearing by having a bench conference.  If that happens, please be patient.

We are not trying to keep important information from you. These conferences are necessary for me to fulfill my responsibility, which is to be sure that evidence is presented to you correctly under the law.

We will, of course, do what we can to keep the number and length of these conferences to a minimum. While we meet, I will invite you to stand up and stretch and take a short break or perhaps even call a recess if it is a lengthy issue.

I may not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

**Third Circuit Model Instruction 1.4**

**1.5    Preliminary Instructions — Evidence**

The evidence from which you are to find the facts consists of the following:

1. The testimony of the witnesses;

2. Documents and other things received as exhibits;

3. Any facts that are stipulated--that is, formally agreed to by the parties; and

4. Any facts that are judicially noticed--that is, facts I say you must accept as true even without other evidence.

The following things are not evidence:

1. Statements, arguments, and questions of the lawyers for the parties in this case;

2. Objections by lawyers.

3. Any testimony I tell you to disregard; and

4. Anything you may see or hear about this case outside the courtroom.

You must make your decision based only on the evidence that you see and hear in court.  Do not let rumors, suspicions, or anything else that you may see or hear outside of court influence your decision in any way.

You should use your common sense in weighing the evidence.  Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves.  If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

There are rules that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence, and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. This simply means that the lawyer is requesting that I make a decision on a particular rule of evidence. You should not be influenced by the fact that an objection is made. Objections to questions are not evidence. Lawyers have an obligation to their clients to make objections when they believe that evidence being offered is improper under the rules of evidence.  You should not be influenced by

the objection or by the court's ruling on it. If the objection is sustained, ignore the question. If it is overruled, treat the answer like any other. If you are instructed that some item of evidence is received for a limited purpose only, you must follow that instruction.

Also, certain testimony or other evidence may be ordered struck from the record and you will be instructed to disregard this evidence. Do not consider any testimony or other evidence that gets struck or excluded.   Do not speculate about what a witness might have said or what an exhibit might have shown.

**Third Circuit Model Instruction 1.5**

## 1.6    Preliminary Instructions – Direct and Circumstantial Evidence

There are two types of evidence that you may use in reaching your verdict. One type of evidence is called "direct evidence."  An example of "direct evidence" is when a witness testifies about something that the witness knows through his own senses — something the witness  has seen, felt, touched or heard or did. If a witness testified that he saw it raining outside, and you believed him, that would be direct evidence that it was raining. Another form of direct evidence is an exhibit where the fact to be proved is its existence or current condition.

The other type of evidence is circumstantial evidence.  "Circumstantial evidence" is proof of one or more facts from which you could find another fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

You should consider both kinds of evidence that are presented to you. The law makes no distinction in the weight to be given to either direct or circumstantial evidence. You are to decide how much weight to give any evidence.

**Third Circuit Model Instruction 1.6**

## 1.7    Preliminary Instructions — Credibility of Witnesses

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe. You are the sole judges of the credibility of the witnesses. "Credibility" means whether a witness is worthy of belief.  You may believe everything a witness says or only part of it or none of it. In deciding what to believe, you may consider a number of factors, including the following:

(1) the opportunity and ability of the witness to see or hear or know the things the witness testifies to;

(2) the quality of the witness's understanding and memory;

(3) the witness's manner while testifying;

(4) whether the witness has an interest in the outcome of the case or any motive, bias or prejudice;

(5) whether the witness is contradicted by anything the witness said or wrote before trial or by other evidence;

(6) how reasonable the witness's testimony is when considered in the light of other evidence that you believe; and

(7) any other factors that bear on believability.

The weight of the evidence to prove a fact does not necessarily depend on the number of witnesses who testify. What is more important is how believable the witnesses were, and how much weight you think their testimony deserves.

**Third Circuit Model Instruction 1.7**

### ***Falsus in uno, falsus in omnibus***

If you find that any witness testified falsely about any material fact, you may disregard all of his or her testimony, or you may accept such parts of it as you wish to accept and exclude such parts of it as you wish to exclude.

*Lambert v. Blackwell*, 387 F.3d 210, 256 (3d Cir. 2004).
O'Malley, Federal Jury Practice and Instructions, § 105.04 (6th ed. 2011).

### 1.9   Preliminary Instructions — Note-Taking By Jurors

If you wish, you may take notes during the presentation of evidence, the summations of attorneys at the conclusion of the evidence, and during my instructions to you on the law. My Courtroom deputy will arrange for pens, pencils, and paper. Remember that your notes are for your own personal use -- they are not to be given or read to anyone else.

As you see, we have a court reporter here who will be transcribing the testimony during the course of the trial. But you should not assume that the transcripts will be available for your review during your deliberations. Nor should you consider notes that you or fellow jurors may take as a kind of written transcript. Instead, as you listen to the testimony, keep in mind that you will be relying on your recollection of that testimony during your deliberations. Here are some other specific points to keep in mind about note taking:

1.   <u>Note-taking is permitted, not required</u>. Each of you may take notes. No one is required to take notes.

2.   <u>Be brief</u>. Do not try to summarize all of the testimony. Notes are for the purpose of refreshing memory. They are particularly helpful when dealing with measurements, times, distances, identities, and relationships. Overuse of note-taking may be distracting. You must determine the credibility of witnesses; so you must observe the demeanor and appearance of each person on the witness stand. Note-taking must not distract you from that task. If you wish to make a note, you need not sacrifice the opportunity to make important observations. You may make your note after having made an observation.

3.   <u>Do not use your notes, or any other juror's notes, as authority to persuade fellow jurors</u>. In your deliberations, give no more and no less weight to the views of a fellow juror just because that juror did or did not take notes. As I mentioned earlier, your notes are not official transcripts. They are not evidence, and they are by no means a complete outline of the proceedings or a list of the highlights in the trial. They are valuable, if at all, only as a way to refresh your memory. Your memory is what you should be relying on when it comes time to deliberate and render your verdict in this case. You therefore are not to use your notes as authority to persuade fellow jurors of what the evidence was during the trial. Notes are not to be used in place of the evidence.

4.     <u>Do not take your notes away from court</u>.  I repeat, at the end of each day, please leave your notes in the jury room. [Describe logistics of storing and securing notes, for example: "If you do take notes, take them with you each time you leave the courtroom and please leave them in the jury room when you leave at night. At the conclusion of the case, after you have used your notes in deliberations, a court officer will collect and destroy them, to protect the secrecy of your deliberations."]

**Third Circuit Model Instruction 1.9**

## 1.10   Preliminary Instructions — Preponderance of the Evidence

This is a civil case. Mr. Watley is the party who brought this lawsuit. Corporal Felsman, Corporal Nilon, and Trooper Sohns are the parties against whom the lawsuit was filed. Mr. Watley has the burden of proving his case by what is called the preponderance of the evidence.  That means Mr. Watley has to prove to you, in light of all the evidence, that what he claims is more likely so than not so.  To say it differently: if you were to put the evidence favorable to Mr. Watley and the evidence favorable to Corporal Felsman, Corporal Nilon, and Trooper Sohns on opposite sides of the scales, Mr. Watley would have to make the scales tip somewhat on his side.  If Mr. Watley fails to meet this burden, the verdict must be for Corporal Felsman, Corporal Nilon, and Trooper Sohns. If you find after considering all the evidence that a claim or fact is more likely so than not so, then the claim or fact has been proved by a preponderance of the evidence.

In determining whether any fact has been proved by a preponderance of evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

You may have heard of the term "proof beyond a reasonable doubt." That is a stricter standard of proof and it applies only to criminal cases. It does not apply in civil cases such as this. So you should put it out of your mind.

**Third Circuit Model Instruction 1.10**

**1.12   Preliminary Instructions — Description of Trial Proceedings**

The trial will proceed in the following manner:

First, the attorney for Mr. Watley will make an opening statement to you. Next, the attorneys for Corporal Felsman, Corporal Nilon, and Trooper Sohns may make an opening statement. What is said in the opening statements is not evidence, but is simply an outline to help you understand what each party expects the evidence to show.

After the attorneys have made their opening statements, then each party is given an opportunity to present its evidence.

Mr. Watley goes first because he has the burden of proof. Mr. Watley will present witnesses whom counsel for Corporal Felsman, Corporal Nilon, and Trooper Sohns may cross-examine, and  Mr. Watley may also present evidence. Following Mr. Watley's case, Corporal Felsman, Corporal Nilon, and Trooper Sohns may present evidence.   Counsel for Mr. Watley may cross-examine witnesses for the defense.

After all the evidence has been presented, then the attorneys will present to you closing arguments to summarize and interpret the evidence in a way that is helpful to their clients' positions. As with opening statements, closing arguments are not evidence. Once the closing arguments are completed, I will then instruct you on the law.  After that you will retire to the jury room to deliberate on your verdict in this case.

**Third Circuit Model Instruction 1.12**

## 2.2    General Instructions For Use During Trial  — Judicial Notice

The rules of evidence permit the judge to accept facts that cannot reasonably be disputed. This is called judicial notice. I have decided to accept as proved the following facts, even though no evidence has been introduced to prove this facts:

1) Corporal Felsman had probable cause to arrest Mr. Watley on May 11, 2016.

2) Excessive force was not used in effecting the arrest of Mr. Watley on May 11, 2016.

You must accept these facts as true for purposes of this case.

**2.4   General Instructions For Use During Trial  — Stipulation of Fact**

The parties have agreed that certain facts are true. Those facts are:

1) Mr. Watley was pulled over by Corporal Felsman on May 11, 2016.

2) Mr. Watley was given three traffic citations by Corporal Felsman, for:

    a.  Operating a vehicle at a speed so slow as to impede the normal flow of traffic;

    b.  Operating a vehicle with the side or rear window obstructed impairing their view; and

    c.  Operating a vehicle on a highway with no rear lighting as required.

3) Mr. Watley was arrested by Corporal Felsman.

You must therefore treat these facts as having been proved for the purposes of this case.

**Federal and State Claims**

Mr. Watley is suing under federal law and state law. I will first instruct you on the elements of the federal law claims and then I will instruct you on the elements of the state law claims.

## Section 1983 Introductory Instruction

Mr. Watley is suing under Section 1983, a civil rights law passed by Congress that provides a remedy to persons who have been deprived of their federal constitutional rights under color state law.

## Third Circuit Model Instruction 4.1

Section 1983 of Title 42 of the United States Code states:

Every person who, under color of any statute, ordinance, regulation, custom or usage of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

## Modern Federal Jury Instructions, Form 87-65

## Section 1983 – Burden of Proof

This is a civil case.   Mr. Watley is the party who brought this lawsuit. Corporal Felsman, Corporal Nilon, and Trooper Sohns are the parties against whom the lawsuit was filed.   Mr. Watley has the burden of proving his case by what is called the preponderance of the evidence.   That means Mr. Watley has to prove to you, in light of all the evidence, that what he claims is more likely so than not so.   To say it differently: if you were to put the evidence favorable to Mr. Watley and the evidence favorable to Corporal Felsman, Corporal Nilon, and Trooper Sohns on opposite sides of the scales, Mr. Watley would have to make the scales tip somewhat on his side.   If Mr. Watley fails to meet this burden, the verdict must be for Corporal Felsman, Corporal Nilon, and Trooper Sohns.   If you find after considering all the evidence that a claim or fact is more likely so than not so, then the claim or fact has been proved by a preponderance of the evidence.

In determining whether any fact has been proved by a preponderance of evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

You may have heard of the term "proof beyond a reasonable doubt."   That is a stricter standard of proof and it applies only to criminal cases.   It does not apply in civil cases such as this.   So you should put it out of your mind.

**Third Circuit Model Instructions 1.10 and 4.2**

## Section 1983 – Elements of Claim

Mr. Watley must prove both of the following elements by a preponderance of the evidence:

First: Corporal Felsman, Corporal Nilon, and Trooper Sohns acted under color of state law.

Second: While acting under color of state law, Corporal Felsman, Corporal Nilon, and Trooper Sohns deprived Mr. Watley of a federal constitutional right.

I will now give you more details on action under color of state law, after which I will tell you the elements Mr. Watley must prove to establish the violation of his federal constitutional right.

**Third Circuit Model Instruction 4.3**

## Section 1983 – Action under Color of State Law

The first element of Mr. Watley's claim is that Corporal Felsman, Corporal Nilon, and Trooper Sohns acted under color of state law. This means that Mr. Watley must show that Corporal Felsman, Corporal Nilon, and Trooper Sohns was using power that he possessed by virtue of state law.

A person can act under color of state law even if the act violates state law. The question is whether the person was clothed with the authority of the state, by which I mean using or misusing the authority of the state.

By "state law," I mean any statute, ordinance, regulation, custom or usage of any state. And when I use the term "state," I am including any political subdivisions of the state, such as a county or municipality, and also any state, county or municipal agencies.

**Third Circuit Model Instruction 4.4**

## Section 1983 – Action under Color of State Law –
## Action under Color of State Law Is Not in Dispute

Because Corporal Felsman, Corporal Nilon, and Trooper Sohns were acting in their capacity as Pennsylvania State Troopers at the relevant time, I instruct you that they were acting under color of state law.  In other words, this element of Mr. Watley's claim is not in dispute, and you must find that this element has been established.

**Third Circuit Model Instruction 4.4.1**

## Section 1983 – Deprivation of a Federal Right

I have already instructed you on the first element of Mr. Watley's claim, which requires Mr. Watley to prove that Corporal Felsman, Corporal Nilon, and Trooper Sohns acted under color of state law.

The second element of Mr. Watley's claim is that Corporal Felsman, Corporal Nilon, and Trooper Sohns deprived him of a federal constitutional right. The federal constitutional right at issue in this case is the Fourth Amendment.

Mr. Watley alleges that he was illegally seized, excessive force was used against him, and his vehicle was illegally searched in violation of his Fourth Amendment rights. I will instruct on the elements of each of these claims in turn after addressing Pennsylvania State Police policies and the personal involvement of each defendant.

# VIOLATION OF POLICY DOES NOT ESTABLISH A VIOLATION OF THE CONSTITUTION

You have heard testimony on Pennsylvania State Police policies and what was described as "standard procedure" or "generally accepted police principles." What ultimately matters is whether the officers' acts were objectively reasonable in light of the facts and circumstances confronting the officers. An act that violates department policy or generally accepted principles, but was objectively reasonable under the circumstances confronting the officers, does not violate the Constitution. Similarly, an objectively unreasonable act that complies with policy or generally accepted principles would nevertheless violate the Constitution if it was objectively unreasonable.

*Davis v. Scherer*, 468 U.S. 183, 194, (1984) ("Officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision").

*Smith v. Freland*, 954 F.2d 343, 347–48 (6th Cir. 1992) (holding that "[u]nder § 1983, the issue is whether [a police officer] violated the Constitution, not whether he should be disciplined by the local police force").

*McKenna v. City of Philadelphia,* 582 F.3d 447, 461 (3d Cir. 2009) (affirming trial court's decision to exclude evidence of Philadelphia Police Department directives on use of force under Rule 403, as the trial court "concluded that the directives had the potential to lead the jury to equate local policy violations with constitutional violations").

*Ickes v. Borough of Bedford*, 807 F.Supp.2d 306, 327 (W.D. Pa. 2011) (*citing Virginia v. Moore*, 533 U.S. 164, 168-78 (2008)) ("a violation of Bedford's taser policy does not necessarily constitute a violation of the Fourth Amendment").

*Davis v. Wigen,* 1995 WL 422790, *2 (E.D. Pa. July 13, 1995) (*citing James v. Quinlan*, 866 F.2d 627, 631 (3d. Cir. 1989) ("plaintiff cannot rely on an internal Bureau of Prisons procedure to establish a constitutional violation").

*Grabski v. Logan,* 2014 WL 1340583, *2 (E.D. Pa. April 4, 2014) (permitting limiting instruction as to violation of an internal policy not constituting a violation of the Fourth Amendment).

# **LACK OF PERSONAL INVOLVEMENT**

Each defendant is liable in this case only if he himself has personally committed a violation of the Plaintiff's constitutional rights. This case involves six defendants. Accordingly, in order for Mr. Hudak to prevail against any defendant, he must demonstrate the actual personal involvement of that defendant in conduct you conclude is unconstitutional. The failure to demonstrate such personal involvement by that defendant requires you to enter a verdict in favor of that defendant. Additionally, you must consider Mr. Hudak's claim against each defendant separately and must render a separate verdict as to each one of them. You cannot find a specific defendant liable as to Mr. Hudak unless you first find that he or she personally and directly violated Mr. Hudak's constitutional rights.

Although there are three defendants in this action, it does not follow from that fact that if one is liable, all or some of the others are liable. Each defendant is entitled to a fair consideration of his own defense, and is not to be prejudiced by the fact—if it should become a fact—that you find against another defendant. Unless otherwise stated, all instructions given to you govern the case as to each defendant.

*Rizzo v. Goode,* 423 U.S. 363 (1976); *Hampton v. Holmesburg Prison Officials,* 546 F.2d 1077 (3d Cir. 1976); Devitt, *Federal Jury Practice and Instructions,* § 71.06 (5th ed. 2000).

## Elements of Seizure

I will now instruct on the elements of each of these claims.

The Fourth Amendment to the United Constitution provides for the "right of the people to be secure in their persons, house, papers, and effects, against unreasonable searches and seizures". Thus, the Fourth Amendment to the United Constitution protects persons from being subjected to unreasonable seizures by the police.

A law enforcement officer may only seize a person (for example, by stopping or arresting the person) if there is appropriate justification to do so.

In this case, Mr. Watley contends that the actions of Corporal Felsman on May 12, 2016 amounted to an unlawful seizure of Mr. Watley without probable cause in violation of the Fourth Amendment to the United States Constitution. Corporal Felsman contends that his actions did not constitute a seizure of Mr. Watley's person because Mr. Watley consented to his actions.

In determining whether a seizure has occurred, the Unites States Supreme Court has held as follows:

> A seizure of the person within the meaning of the Fourth Amendments occurs when, "taking into account all of the circumstances surrounding the encounter, the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'"

Kaupp v. Texas, 538 U.S. 626, 629 (2003).

Accordingly, whenever a police officer accosts an individual and restrains his freedom to walk away, he has seized that person. Stated differently, a seizure occurs when the officer, by means of a show of physical force or authority, has in some way restrained the liberty of a citizen.

Thus, when determining whether a seizure occurred in this case, you must ask yourself whether the presence of force or show authority displayed by Corporal Felsman on May 12, 2016 in some way restrained Mr. Watley's liberty as a citizen. You must also ask yourself whether, based on that presence of force or show of authority, a reasonable person in Mr. Watley's positon would feel free to ignore

Corporal Felsman and decline his requests or otherwise terminate the encounter and walk away.

Obviously, an arrest constitutes a seizure, and the Fourth Amendment prohibits police officers from arresting a citizen unless there is probable cause to do so.   Probable cause for an arrest exists when the facts and circumstances available to police officers would warrant a prudent officer in believing that Mr. Watley committed or was committing a crime.

In deciding whether a seizure occurred, you should consider all of the relevant circumstances.   Relevant circumstances can include, for example:
- the length of the interaction;
- the severity of the crime at issue;
- whether Mr. Watley posed an immediate threat to the safety of Corporal Felsman or others;
- the possibility that Mr. Watley was armed;
- the possibility that other persons subject to the police action were violent or dangerous;
- the duration of Corporal Felsman's action;
- whether Corporal Felsman's actions caused undue delay or lengthened the seizure;
- whether Corporal Felsman pointed a gun at Mr. Watley;
- whether Corporal Felsman physically touched Mr. Watley;
- whether Corporal Felsman stated he was placing Mr. Watley under arrest;
- the number of persons with whom Corporal Felsman had to contend; and
- whether the physical force applied was of such an extent as to lead to unnecessary injury.

Here, Mr. Watley claims that Corporal Felsman on May 12, 2014 restrained his liberty as a citizen to such a degree which subjected him to a seizure Corporal Felsman, however, argues that despite this presence of force and show of authority, Mr. Watley voluntarily consented and agreed to be taken by him to his vehicle.

 See Third Circuit Model Jury Instruction 4.12.2.

In this case, I have already determined, based on the facts and circumstances available, that a seizure of Mr. Watley occurred on May 12, 2016. Accordingly, your verdict must be for Mr. Watley.

27

**Third Circuit Model Instruction 4.12 and Comment**
**Third Circuit Model Instruction 4.12.2 and Comment**
<u>Terry v. Ohio</u>, 392 U.S. 1, 16, 19 n.16 (1968)
<u>United States v. Drayton</u>, 536 U.S. 194, 202 (2002)
<u>Kaupp v. Texas</u>, 538 U.S. 626, 629-632 (2003)

## Elements of Excessive Force

The Fourth Amendment to the United States Constitution protects persons from being subjected to excessive force while being arrested.  In other words, a law enforcement official may only use the amount of force necessary under the circumstances to make the arrest.  Every person has the constitutional right not to be subjected to excessive force while being arrested, even if the arrest is otherwise proper.

In this case, Mr. Watley claims that Corporal Felsman used excessive force through an implied arrest when he provided Mr. Watley a courtesy transport to his vehicle on May 12, 2016.  In order to establish that Corporal Felsman used excessive force, Mr. Watley must prove both of the following by a preponderance of the evidence:

First:  Corporal Felsman intentionally committed certain acts.

Second: Those acts violated Mr. Watley's Fourth Amendment right not to be subjected to excessive force.

In determining whether Corporal Felsman's acts constituted excessive force, you must ask whether the amount of force Corporal Felsman used was the amount which a reasonable officer would have used under similar circumstances.  You should consider all the relevant facts and circumstances that Corporal Felsman reasonably believed to be true at the time of the arrest.  You should consider those facts and circumstances in order to assess whether there was a need for the application of force, and the relationship between that need for force, if any, and the amount of force applied.  The circumstances relevant to this assessment can include, for example,

- the severity of the crime at issue;
- whether Mr. Watley posed an immediate threat to the safety of Corporal Felsman or others;
- the possibility that Mr. Watley was armed;
- the possibility that other persons subject to the police action were violent or dangerous;
- the duration of Corporal Felsman's action;
- whether Corporal Felsman's actions caused undue delay or lengthened the seizure;
- whether Corporal Felsman pointed a gun at Mr. Watley;

- whether Corporal Felsman physically touched Mr. Watley;
- whether Corporal Felsman stated he was placing Mr. Watley under arrest;
- the number of persons with whom Corporal Felsman had to contend; and
- whether the physical force applied was of such an extent as to lead to unnecessary injury.

The reasonableness of Corporal Felsman's acts must be judged from the perspective of a reasonable officer on the scene. The law permits the officer to use only that degree of force necessary. However, not every push or shove by a police officer, even if it may later seem unnecessary in the peace and quiet of this courtroom, constitutes excessive force. The concept of reasonableness makes allowance for the fact that police officers are often forced to make split-second judgments in circumstances that are sometimes tense, uncertain, and rapidly evolving, about the amount of force that is necessary in a particular situation.

As I told you earlier, Mr. Watley must prove that Corporal Felsman intended to commit the acts in question; but apart from that requirement, Corporal Felsman's actual motivation is irrelevant. If the force Corporal Felsman used was unreasonable, it does not matter whether Corporal Felsman had good motivations. And an officer's improper motive will not establish excessive force if the force used was objectively reasonable.

What matters is whether Corporal Felsman's acts were objectively reasonable in light of the facts and circumstances confronting him.

The Fourth Amendment permits the use of "reasonable" force. *Graham*, 490 U.S. at 396. "[E]ach case alleging excessive force must be evaluated under the totality of the circumstances." *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997); *see also Rivas v. City of Passaic*, 365 F.3d 181, 198 (3d Cir. 2004) ("While some courts 'freeze the time frame' and consider only the facts and circumstances at the precise moment that excessive force is applied, other courts, including this one, have considered all of the relevant facts and circumstances leading up to the time that the officers allegedly used excessive force."); *Abraham*, 183 F.3d at 291 (expressing "disagreement with those courts which have held that analysis of 'reasonableness' under the Fourth Amendment requires excluding any evidence of events preceding the actual 'seizure'"); *Curley v. Klem*, 499 F.3d 199, 212 (3d Cir. 2007) ("*Curley II*") (noting with approval the district court's view "that the analysis in this case could not properly be shrunk into the few moments immediately before Klem shot Curley, but instead must be decided in light of all the events which had taken place over the course of the entire evening").

Determining reasonableness "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

This inquiry should be based on the facts that the officer reasonably believed to be true at the time of the encounter. *See Saucier v. Katz*, 533 U.S. 194, 205 (2001) ("If an officer reasonably, but mistakenly, believed that a suspect was likely to fight back ... the officer would be justified in using more force than in fact was needed."); *Estate of Smith v. Marasco*, 318 F.3d 497, 516-17 (3d Cir. 2003) (analyzing Fourth Amendment excessive force claim based on officers' knowledge or "objectively reasonable belief" concerning relevant facts); *Curley v. Klem*, 298 F.3d 271, 280 (3d Cir. 2002) ("*Curley I*").

Other relevant factors may include "the possibility that the persons subject to the police action are violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." *Kopec v. Tate*, 361 F.3d 772, 777 (3d Cir. 2004).

Physical injury is relevant but it is not a prerequisite of an excessive force claim. *See Sharrar*, 128 F.3d at 822 ("We do not agree that the absence of physical injury necessarily signifies that the force has not been excessive, although the fact that the physical force applied was of such an extent as to lead to injury is indeed a relevant factor to be considered as part of the totality."); *see also Mellott v. Heemer*, 161 F.3d 117, 123 (3d Cir. 1998) (citing "the lack of any physical injury to Mr. Watleys" as one of the factors supporting court's conclusion that force used was objectively reasonable).

See Third Circuit Model Jury Instruction 4.9 and Comment.

To prevail on his excessive force claim, Mr. Watley must prove that he was "seized" when given a courtesy ride to his vehicle. Corporal Felsman asserts that Mr. Watley was not seized because he was free to leave and voluntarily consented to be transported to his vehicle.

"It is elementary that detention is not synonymous with arrest. Detention must be without consent and without legal cause to constitute false arrest." *Pollack v. City of Newark, N. J.,* 147 F. Supp. 35, 38–39 (D.N.J. 1956), *aff'd*, 248 F.2d 543

(3d Cir. 1957). "A seizure does not occur every time a police officer approaches someone . . ." *Johnson v. Campbell*, 332 F.3d 199, 205 (3d Cir. 2003). "To state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a 'seizure' occurred and that it was unreasonable." *See Abraham v. Raso*, 183 F.3d 279, 288 (3d Cir. 1999).

Accordingly, if you find based on the law as I explained it to you that the encounter between Mr. Watley and Corporal Felsman on May 12, 2016 amount to a seizure, and that Corporal Felsman used excessive force against Mr. Watley, then your verdict must be for Mr. Watley.

**Third Circuit Model Jury Instruction 4.9 and Comment.**
**Pollack v. City of Newark, N. J., 147 F. Supp. 35, 38–39 (D.N.J. 1956), aff'd, 248 F.2d 543 (3d Cir. 1957).**
**Johnson v. Campbell, 332 F.3d 199, 205 (3d Cir. 2003).**
**Abraham v. Raso, 183 F.3d 279, 288 (3d Cir. 1999).**

## **Elements of an Unlawful Search**

The Fourth Amendment to the United Constitution provides for the "right of the people to be secure in their persons, house, papers, and effects, against unreasonable searches and seizures". Thus, the Fourth Amendment to the United Constitution protects persons from being subjected to unreasonable searches by the police.

A law enforcement officer may only conduct a warrantless search if the government's legitimate interests in the search outweigh the individual's legitimate expectation of privacy in the object of the search. *United States v. Mundy*, 621 F.3d 283, 287 (3d Cir. 2010) (citing *United States v. Salmon*, 944 F.2d 1106, 1120 (3d Cir. 1991)).

Inventory searches are one such situation. *Colorado v. Bertine*, 479 U.S. 367, 371 (1987); *Illinois v. Lafayette*, 462 U.S. 640, 643 (1983). Inventory searches pursuant to standard police procedures are reasonable. *Id.* Inventory procedures serve three "strong governmental interests": "[1] to protect an owner's property while it is in the custody of the police, [2] to insure against claims of lost, stolen, or vandalized property, and [3] to guard the police from danger." *Bertine*, 479 U.S. at 372.

Lawful inventory searches must be "conducted according to standardized criteria" or established routine, consistent with the purpose of a non-investigative search. *Id.* at 374 n. 6.

Therefore, to prevail on his claim of an unlawful search and seizure of his vehicle, Mr. Watley must show that his vehicle was not searched according to an established routine and standard police procedure. *Carroll v. United States*, 267 U.S. 132, 147 (1925); *United States v. Mundy*, 621 F.3d 283, 288 (3d Cir. 2010).

In this case, Mr. Watley contends that the actions of Corporal Nilon and Trooper Sohns on May 11, 2016 in searching his vehicle for valuables prior to handing its keys over to a towing company amounted to an unlawful search without probable cause in violation of the Fourth Amendment to the United States Constitution. Corporal Nilon and Trooper Sohns contend that their actions were lawful and the search was conducted pursuant to standard police procedure.

In deciding whether an unlawful search occurred, you should consider all of the relevant circumstances. Relevant circumstances can include, for example:
- the length of the search;

- whether the search was conducted pursuant to standard police procedure;
- whether the search was conducted to protect Mr. Watley's valuable possessions while not in his possession;
- whether the search was conducted to insure against claims of lost, stolen, or vandalized property;
- whether the search was conducted to guard the police from danger;
- and whether the government's legitimate interest in conducting the search outweighed Mr. Watley's legitimate expectation of privacy in the vehicle.

Accordingly, if you find based on the law as I explained it to you that Corporal Nilon and Trooper Sohns did not conduct the search pursuant to standard police procedures and that Mr. Watley's legitimate expectation of privacy outweighed the government's legitimate interest in conducting the search, then your verdict must be for Mr. Watley.

**United States v. Mundy, 621 F.3d 283, 287 (3d Cir. 2010).**
**Colorado v. Bertine, 479 U.S. 367, 371 (1987)**
**Illinois v. Lafayette, 462 U.S. 640, 643 (1983).**
**Carroll v. United States, 267 U.S. 132, 147 (1925).**
**United States v. Mundy, 621 F.3d 283, 288 (3d Cir. 2010).**

## Section 1983 – Damages – Compensatory Damages

I am now going to instruct you on damages.  Just because I am instructing you on how to award damages does not mean that I have any opinion on whether or not Corporal Felsman, Corporal Nilon, and Trooper Sohns should be held liable.

If you find Corporal Felsman, Corporal Nilon, and Trooper Sohns liable, then you must consider the issue of compensatory damages.  You must award Mr. Watley an amount that will fairly compensate him for any harm he actually sustained as a result of the unlawful arrest.

Mr. Watley must show that the injury would not have occurred without Corporal Felsman's, Corporal Nilon's, and Trooper Sohns' actions.  Mr. Watley must also show that Corporal Felsman's, Corporal Nilon's, and Trooper Sohns' actions played a substantial part in bringing about the harm, and that the harm was either a direct result or a reasonably probable consequence of Corporal Felsman's, Corporal Nilon's, and Trooper Sohns' actions.

Compensatory damages must not be based on speculation or sympathy. They must be based on the evidence presented at trial, and only on that evidence. Mr. Watley has the burden of proving compensatory damages by a preponderance of the evidence.

Mr. Watley claims, and is entitled to recover, the following items of damages:

- Damages to compensate him for the reasonable value of legal services that he obtained and expended to defend and clear himself;

- Damages to compensate him for the unlawful seizure, confinement and restraint of liberty caused by Corporal Felsman's, Corporal Nilon's, and Trooper Sohns' actions wrongful conduct; and

- Damages to compensate him for the emotional distress, personal anguish, humiliation, mental harm and impairment to his reputation that he has suffered, and is reasonably likely to suffer in the future, because of Corporal Felsman's, Corporal Nilon's, and Trooper Sohns' actions wrongful conduct.

In order to establish damages, Mr. Watley must further demonstrate that any damages sustained were proximately caused by the actions of Corporal Felsman,

Corporal Nilon, and Trooper Sohns in using excessive force against him in violation of his rights under the Fourth Amendment.  *See Martinez v. California,* 444 U.S. 277, 285 (1990).

**Third Circuit Model Instruction 4.8.1 and Comment**
**<u>Brooks v. Andolina</u>, 826 F.2d 1266, 1269 (3d Cir. 1987)**
**<u>Martinez v. California</u>, 444 U.S. 277, 285 (1990)**

**Section 1983- Damages – Nominal Damages**

If you return a verdict for Mr. Watley, but Mr. Watley has failed to prove compensatory damages, then you must award nominal damages of $1.00.

A person whose federal rights were violated is entitled to a recognition of that violation, even if he suffered no actual injury.  Nominal damages (of $1.00) are designed to acknowledge the deprivation of a federal right, even where no actual injury occurred.

However, if you find actual injury, you must award compensatory damages (as I instructed you), rather than nominal damages.

**Third Circuit Model Instruction 4.8.2**

## Section 1983 – Damages – Punitive Damages

In addition to compensatory or nominal damages, you may consider awarding Mr. Watley punitive damages.  A jury may award punitive damages to punish Corporal Felsman, Corporal Nilon, and Trooper Sohns, or to deter them and others like the defendant from committing such conduct in the future.  Where appropriate, the jury may award punitive damages even if Mr. Watley suffered no actual injury and so receives nominal rather than compensatory damages.

You may only award punitive damages if you find that Corporal Felsman, Corporal Nilon, and Trooper Sohns acted maliciously or wantonly in violating Mr. Watley's federally protected rights.

- A violation is malicious if it was prompted by ill will or spite towards Mr. Watley.  A defendant is malicious when he consciously desires to violate federal rights of which he is aware, or when he consciously desires to injure Mr. Watley in a manner he knows to be unlawful.  A conscious desire to perform the physical acts that caused Mr. Watley's injury, or to fail to undertake certain acts, does not by itself establish that Corporal Felsman, Corporal Nilon, and Trooper Sohns had a conscious desire to violate rights or injure Mr. Watley unlawfully.

- A violation is wanton if the person committing the violation recklessly or callously disregarded Mr. Watley's rights.

If you find that it is more likely than not that Corporal Felsman, Corporal Nilon, and Trooper Sohns acted maliciously or wantonly in violating Mr. Watley's federal right to be free from unreasonable seizure, then you may award punitive damages against that defendant.  However, an award of punitive damages is discretionary; that is, if you find that the legal requirements for punitive damages are satisfied, then you may decide to award punitive damages, or you may decide not to award them.  I will now discuss some considerations that should guide your exercise of this discretion.  But remember that you cannot award punitive damages unless you have found that Corporal Felsman, Corporal Nilon, and Trooper Sohns acted maliciously or wantonly in violating Mr. Watley's federal right to be free from unreasonable seizure.

If you have found that Corporal Felsman, Corporal Nilon, and Trooper Sohns acted maliciously or wantonly in violating Mr. Watley's federal right to be

free from unreasonable seizure, then you should consider the purposes of punitive damages.  The purposes of punitive damages are to punish a defendant for a malicious or wanton violation of Mr. Watley's federal rights, or to deter them and others like them from doing similar things in the future, or both.  Thus, you may consider whether to award punitive damages to punish Corporal Felsman, Corporal Nilon, and Trooper Sohns.  You should also consider whether actual damages standing alone are sufficient to deter or prevent Corporal Felsman, Corporal Nilon, and Trooper Sohns from against performing any wrongful acts they may have performed.  Finally, you should consider whether an award of punitive damages in this case is likely to deter other persons from performing wrongful acts similar to those Corporal Felsman, Corporal Nilon, and Trooper Sohns may have committed.

If you decide to award punitive damages, then you should also consider the purposes of punitive damages in deciding the amount of punitive damages to award.  That is, in deciding the amount of punitive damages, you should consider the degree to which Corporal Felsman, Corporal Nilon, and Trooper Sohns should be punished for their wrongful conduct toward Mr. Watley, and the degree to which an award of one sum or another will deter Corporal Felsman, Corporal Nilon, and Trooper Sohns or others from committing similar wrongful acts in the future.

In considering the purposes of punishment and deterrence, you should consider the nature of Corporal Felsman's, Corporal Nilon's, and Trooper Sohns' actions.  You should also consider the amount of harm actually caused by their actions, and the harm that could result if such actions are not deterred in the future.

**Third Circuit Model Instruction 4.8.3**

## Elements of State Law Claims

Mr. Watley has raised claims pursuant to Pennsylvania state law. I will now instruct you on those claims.

## Assault

An assault is an act done with the intent to put another in reasonable and immediate fear of a harmful or offensive contact with his or her body and that does, in fact, cause such fear.

To commit an assault, it is not necessary that the person actually intend to inflict a harmful or offensive contact with the body of another. It is enough that the person intend to cause only a fear of such contact.

In order for Corporal Felsman to be held responsible for the commission of an assault against Mr. Watley, you must find:

*First*, that Corporal Felsman intended to put Mr. Watley in reasonable and immediate fear of a harmful or offensive contact with his body; and

*Second*, that Mr. Watley, as a result of Corporal Felsman's act, was put in reasonable and immediate fear of such contact.

Pennsylvania Civil Jury Instruction 17.10.

To prevail on his claim of assault pursuant to Pennsylvania law, Mr. Watley must show that Corporal Felsman intended to cause a harmful or offensive contact with Mr. Watley, and thereby put him in imminent apprehension of such contact. Restatement (Second) of Torts § 21 (1965).

**Pennsylvania Civil Jury Instruction 17.10.**
**Restatement (Second) of Torts § 21 (1965).**

## Battery

A battery is an act done with the intent to cause a harmful or offensive contact with the body of another [or an act done with the intent to put another in reasonable and immediate fear of a harmful or offensive contact with his or her body] and that directly [or indirectly] results in the harmful or offensive contact with the body of another.

In order for Corporal Felsman to be held responsible for committing a battery against Mr. Watley, you must find:

*First*, that Corporal Felsman intended to cause a harmful or offensive contact with the body of Mr. Watley or that Corporal Felsman intended to put Mr. Watley in reasonable and immediate fear of a harmful or offensive contact with his body, and

*Second*, that Corporal Felsman's act directly resulted in a harmful or offensive contact with Mr. Watley's body.

A body contact is offensive if it would offend a reasonable person's personal sense of dignity.

Pennsylvania Civil Jury Instruction 17.20.

To prevail on his claim of battery pursuant to Pennsylvania law, Mr. Watley must show that Corporal Felsman intended to cause a harmful or offensive contact to him and a harmful contact resulted, and that he did not consent to being transported. Restatement (Second) of Torts § 13 (1965).

**Pennsylvania Civil Jury Instruction 17.20.**
**Restatement (Second) of Torts § 13 (1965).**

## Factual Cause

In order for Mr. Watley to recover in this case, the Troopers' conduct must have been a factual cause in bringing about harm. Conduct is a factual cause of harm when the harm would not have occurred absent the conduct. To be a factual cause, the conduct must have been an actual, real factor in causing the harm, even if the result is unusual or unexpected. A factual cause cannot be an imaginary or fanciful factor having no connection or only an insignificant connection with the harm.

To be a factual cause, the Troopers' conduct need not be the only factual cause. The fact that some other causes concur with any improper conduct by the Troopers in producing an injury does not relieve the Troopers from liability as long as any improper conduct of the Troopers is a factual cause of the injury.

**Pennsylvania Civil Jury Instruction 13.20.**

## Consent

A Mr. Watley may not recover for damages resulting from an intentional tort to which he or she has consented. *See* Restatement (Second) of Torts §§ 63-111 (1965).

**Restatement (Second) of Torts §§ 63-111 (1965).**

## Instructions Concerning Verdict Form

A verdict form has been prepared for your convenience. I will review this form with you now, and afterwards you will take it with you to the jury room.

[Form of special verdict read]

In order for you as a jury to answer a question, each juror must agree to the answer. In other words, your answers to each question must be unanimous. Your foreperson will write the unanimous answer of the jury in the space provided after each question, and will date and sign the form of special verdict when completed.

Nothing said in the verdict form is meant to suggest what your verdict should be. You alone have the responsibility for deciding the verdict.

## 3.1    General Instructions For Use At End of Trial — Deliberations

When you retire to the jury room to deliberate, you may take with you these instructions, your notes and the exhibits that the Court has admitted into evidence. You should select one member of the jury as your foreperson. That person will preside over the deliberations and speak for you here in open court.

You have two main duties as jurors. The first one is to decide what the facts are from the evidence that you saw and heard here in court. Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide if, under the appropriate burden of proof, the parties have established their claims. It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions that I gave you before and during the trial, and these instructions. All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

As jurors, you have a duty to consult with each other and to deliberate with the intention of reaching a verdict. Each of you must decide the case for yourself, but only after a full and impartial consideration of all of the evidence with your fellow jurors. Listen to each other carefully. In the course of your deliberations, you should feel free to re-examine your own views and to change your opinion based upon the evidence. But you should not give up your honest convictions about the evidence just because of the opinions of your fellow jurors. Nor should you change your mind just for the purpose of obtaining enough votes for a verdict.

When you start deliberating, do not talk to the jury officer, to me or to anyone but each other about the case. During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as a cell phone, smart phone [like Blackberries or iPhones], or computer of any kind; the internet, any internet service, or any text or instant messaging service [like Twitter]; or any internet chat room, blog, website, or social networking service [such as Facebook, MySpace, LinkedIn, or YouTube], to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict.

You may not use these electronic means to investigate or communicate about the case because it is important that you decide this case based solely on the evidence presented in this courtroom. Information on the internet or available through social media might be wrong, incomplete, or inaccurate. Information that you might see on the internet or on social media has not been admitted into evidence and the parties have not had a chance to discuss it with you. You should not seek or obtain such information and it must not influence your decision in this case.

If you have any questions or messages for me, you must write them down on a piece of

paper, have the foreperson sign them, and give them to the jury officer.  The officer will give them to me, and I will respond as soon as I can.  I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you.

One more thing about messages.  Never write down or tell anyone how you stand on your votes.  For example, do not write down or tell anyone that a certain number is voting one way or another.   Your votes should stay secret until you are finished.

Your verdict must represent the considered judgment of each juror.  In order for you as a jury to return a verdict, each juror must agree to the verdict.  Your verdict must be unanimous.

A form of verdict has been prepared for you.  It has a series of questions for you to answer.  You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will fill it  in, and have your foreperson date and sign the form. You will then return to the courtroom and your foreperson will give your verdict. Unless I direct you otherwise, do not reveal your answers until you are discharged. After you have reached a verdict, you are not required to talk with anyone about the case unless I order you to do so.

Once again, I want to remind you that nothing about my instructions and nothing about the form of verdict is intended to suggest or convey in any way or manner what I think your verdict should be.  It is your sole and exclusive duty and responsibility to determine the verdict.

## Third Circuit Model Instruction 3.1

Respectfully submitted,

**JOSH SHAPIRO**
**Attorney General**

By:   *s/ Lindsey A. Bedell*

**Office of Attorney General**
**15th Floor, Strawberry Square**
**Harrisburg, PA 17120**
**Phone: (717) 772-3561**
**lbedell@attorneygeneral.gov**

**LINDSEY A. BEDELL**
**Deputy Attorney General**
**Attorney ID 308158**

**DANIEL J. GALLAGHER**
**Deputy Attorney General**
**Attorney ID 30451**

**KELI M. NEARY**
**Chief Deputy Attorney General**
**Civil Litigation Section**

**Date:  October 10, 2018**

*Counsel for Defendants Felsman,*
*Nilon and Sohns*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOSEPH J. WATLEY,** | : | **No. 3:16-CV-2059** |
| **Plaintiff** | : | |
| | : | **Judge Caputo** |
| **v.** | : | |
| | : | **Electronically Filed Document** |
| **MICHAEL FELSMAN,** | : | |
| | : | *Complaint Filed 10/13/16* |
| **Defendants** | : | |

## CERTIFICATE OF SERVICE

I, Lindsey A. Bedell, Deputy Attorney General for the Commonwealth of Pennsylvania, Office of Attorney General, hereby certify that on October 10, 2018, I caused to be served a true and correct copy of the foregoing document titled Defendants' Proposed Jury Instructions to the following:

## VIA ELECTRONIC FILING

**Cynthia L. Pollick, Esquire**
**The Employment Law Firm**
**363 Laurel Street**
**Pittston, PA  18640**
**pollick@lawyer.com**
*Counsel for Plaintiff*

*/s/ Lindsey A. Bedell*
**LINDSEY A. BEDELL**
Deputy Attorney General